THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASPER C. OFOMA, Defendant-Appellant.
Fourth District   No. 4—92—0496

Opinion filed March 18, 1993.

Ostling, Ensign, Barry & Glenn, of Bloomington (William A. Yoder, of counsel), for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial conducted in the circuit court of McLean County, the defendant Jasper Ofoma was found guilty of the unlawful possession of more than 30 grams, but not more than 500 grams, of a substance containing cannabis. (Ill. Rev. Stat. 1989, ch. 56½, par. 704(d).) Defendant was subsequently sentenced to serve a term of probation of 30 months, conditioned on serving four months' imprisonment in the county jail, with credit for two days previously served, and paying a street-value fine of $1,500, a $10 monthly probation service fee, $50 as a drug-testing fee, and $245 as costs.

On appeal, defendant raises the following issues: (1) whether the indictment for unlawful possession of cannabis was deficient for failing to include the language "other than as authorized by the Cannabis Control Act" (Act) (see Ill. Rev. Stat. 1989, ch. 56½, par. 711); (2) whether he was denied due process because the State failed to disclose intelligence reports in discovery and the trial court refused to order the State to disclose these documents following an *in camera* inspection; and (3) whether his conviction for unlawful possession of cannabis must be reversed because the subject cannabis was improperly admitted into evidence for the reason that the State failed to lay a proper chain of custody. We affirm.

Count II of the indictment alleged as follows:

"The Grand Jury of McLean County, Illinois, charges that Jaspar C. Ofoma on or about the 8th day of October, 1991, at Bloomington in the County of McLean, State of Illinois, committed the offense of Unlawful Possession of Cannabis in that he knowingly possessed more than 30 grams but not more than 500 grams of a substance containing cannabis in violation of Section 704 (d), Chapter 56½, Illinois Revised Statutes (1989). A class 4 Felony."

Defendant points out that section 11 of the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 711) provides for the legal possession of cannabis by persons engaged in research. Defendant argues that, because he could have been such a person, count II of the indictment is defective for

failing to allege that he possessed the cannabis "other than as authorized by the Cannabis Control Act." This challenge to the sufficiency of the indictment, however, is raised for the first time on appeal.

■ A criminal charge contained in an indictment may be challenged for the first time on appeal. *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440.

> "When attacked for the first time on appeal a complaint is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Grant*, 57 Ill. 2d 264; *People v. Harvey*, 53 Ill. 2d 585." (*Pujoue*, 61 Ill. 2d at 339, 335 N.E.2d at 440.)

In order to prevail on a challenge to the sufficiency of the indictment raised for the first time on appeal, the defendant must show that the defect actually prejudiced him in the preparation of his defense. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 448, 584 N.E.2d 89, 91.) Defendant has failed to show such prejudice and the charge is clearly sufficient to allow defendant to pursue his defense and to prevent him from being placed in double jeopardy for the same conduct. This issue provides no basis for overturning defendant's conviction.

The next issue is whether defendant was denied his right to due process because the State did not disclose intelligence reports from the Illinois State Police, Division of Criminal Investigations (DCI), to him in discovery, pursuant to Supreme Court Rules 412(c) and 415(b) (134 Ill. 2d Rules 412(c), 415(b)). Defendant also argues the trial court erred by refusing to order the State to provide these reports following an *in camera* inspection.

Defendant was charged by indictment on October 31, 1991. The defendant was arraigned on December 27, 1991. The State's Attorney and the defendant both filed discovery motions, and an arraignment order was entered setting discovery compliance dates for the State as January 10, 1992, and for the defense as January 24, 1992. Discovery answers were filed by defendant and the State. The State's answer to defendant's motion for discovery disclosed prior intelligence information was available to officers investigating this case. No additional disclosures regarding intelligence information were made by the State prior to trial on May 6, 1992.

This case involved defendant receiving a package of cannabis delivered through the United States postal service. Rod Damery, a United States postal inspector assigned to narcotics investigation, revealed on cross-examination that he had heard of the name Jasper

Ofoma before defendant came to the post office and signed the receipt for the package because of "some intelligence information." On defendant's motion, the jury was directed by the judge to disregard the witness' statement.

Following Damery's testimony, defendant moved for a mistrial based on the failure of the State to provide the intelligence information. Defense counsel stated he specifically asked the State to produce this material and did not receive it. The assistant State's Attorney admitted he had requested the information from DCI, but was told it could not be provided without a court order. The assistant State's Attorney further admitted he did nothing more than inquire about the information. He explained he understood it did not involve the charge in this case, but admitted he did not know that. The judge told the prosecutor to get the information during the lunch hour and produce it in court. The trial judge reserved ruling on the motion for mistrial, indicating an agreement with the State that defendant had "opened the door" during cross-examination.

The documents were presented for an *in camera* inspection, and Master Sergeant Frank Charles Walter from DCI testified concerning the reports outside the presence of the jury. The assistant State's Attorney represented to the court that the documents contained the identity of an individual whose identity should not be disclosed for reasons which included the individual's safety. The three reports presented at the first *in camera* inspection all related to the same confidential source. The reports indicated the source provided information and was paid therefor. Walter admitted that the second payment was made after defendant's arrest because the confidential source thought he deserved to be paid more.

In an interview conducted August 2, 1991, questions were posed of this individual concerning defendant. The informant stated he would reveal no information unless he could be guaranteed his identity would be concealed and he would be paid. In addition to providing information about defendant, the individual provided information on other subjects. The report of August 2, 1991, did not contain information about defendant, but only the informant's requests for confidentiality and payment. After examination by the court, Walter went back to the DCI office to attempt to determine if there were any other records which would explain how DCI would have become aware of defendant as a person who would be a subject for investigation.

Subsequently, Walter returned with a document dated October 16, 1991, in which Sergeant Michael Bernardini reported a telephone con-

versation with the confidential source relating that defendant was awaiting a shipment of cannabis from Nigeria. This report was authored on October 16, 1991, and concerned a telephone conversation on that date. This occurred after the events which gave rise to the case at bar. There was also a report which indicated a file was opened after Bernardini was informed on August 8, 1991, that a package would be sent to post office box 491, Normal, Illinois. The source of the information was not included in the report. Subsequent to that, the post office box was identified as being registered to defendant. A photocopy of the application for the post office box was included with the report, and the application had defendant's address on it. Another report dated August 9, 1991, indicated defendant and another individual left a residence at 1217 Orchard in Bloomington to travel to Chicago to pick up illicit drugs. Subsequently, Damery was questioned by the trial judge outside the presence of the jury and stated he did not recall any notification from DCI to be on the lookout for a package. Damery further testified the package was simply observed in the mail stream and opened in New York. After reviewing all the documents and considering Walter's testimony and arguments of counsel, the trial judge ruled that these reports did not contain "Brady material that is required to be disclosed to" defendant. This ruling remained in effect following the testimony of Damery.

In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, the United States Supreme Court stated as follows:

> "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In conformity with this pronouncement, the Illinois Supreme Court has provided in Rule 412(c) as follows:

> "Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (134 Ill. 2d R. 412(c).)

There is a continuing duty to disclose such evidence. 134 Ill. 2d R. 415(b).

The rule in *Brady* can be applied in three quite different situations, to wit: (1) where the undisclosed evidence demonstrates that

the prosecution's case includes perjured testimony, (2) where, as in *Brady*, there was a request for specific evidence, and (3) where the request is a general one for *"Brady* material" or the State fails to disclose *sua sponte*. (*United States v. Agurs* (1976), 427 U.S. 97, 103-07, 49 L. Ed. 2d 342, 349-52, 96 S. Ct. 2392, 2397-99.) The second situation, illustrated by the *Brady* case, is most similar to the case at bar. In *Brady*, extrajudicial statements by an accomplice were suppressed. Noting the specific request and the materiality of the statement, it was held Brady was deprived of due process. (*Brady*, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97.) However, interpreting the State court as having ruled the confession to be inadmissible on the issue of guilt and innocence, the entire trial was not lacking in due process, and so only a new trial on the issue of punishment was necessary as that was the only issue to which the suppressed statement was "material." *Brady*, 373 U.S. at 89-91, 10 L. Ed. 2d at 219-20, 83 S. Ct. at 1197-98.

In *Agurs*, the term "materiality" as it applies to a *Brady* situation was discussed as follows:

> "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.
>
> * * *
>
> The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." (*Agurs*, 427 U.S. at 104-06, 49 L. Ed. 2d at 350-51, 96 S. Ct. at 2398-99.)

As defendant points out, the Court in *Agurs* did state that there is seldom an excuse for the State to fail to respond to a specific relevant request for discovery. (*Agurs*, 427 U.S. at 106, 49 L. Ed. 2d at 351, 96 S. Ct. at 2399.) However, *Agurs* should not be interpreted as suggesting that defendant may dispense with a showing of the materiality of the suppressed information in order to obtain reversal of the conviction.

Defendant contends that prior notice of the DCI investigation material would have helped him discredit the evidence and changed the outcome of the trial. Defendant complains he was not able to cross-examine the confidential source or undermine the credibility of the confidential source, particularly in light of the fact the source was paid for supplying the information.

If an informant is not to be called as a State witness and his identity is a prosecutorial secret and the defendant's constitutional rights

will not be infringed, the claimant's identity need not be disclosed. (*People v. Woods* (1990), 139 Ill. 2d 369, 377, 565 N.E.2d 643, 648.) However, the propriety of disclosing the informant's identity must be decided on a case-by-case basis, balancing the public interest in protecting informants against the right of the accused to prepare a defense. *Woods*, 139 Ill. 2d at 378, 565 N.E.2d at 648.

■ In this case, the informant was not a witness. Nor has defendant demonstrated how the challenging of the credibility of the informant would have affected a case in which defendant was identified by several witnesses as having been the person who picked up a package at the post office and signed for it. The most defendant could have done was challenge the truth of the information provided to the investigators by the source. Even if the informant was an absolute liar, that fact would not be of consequence to a determination of whether defendant committed the offense in the case at bar. Defendant also does not argue on appeal that the information was material to the sentencing hearing. Therefore, defendant was not deprived of due process in this case, although the State's failure to comply with requested discovery ought not be condoned.

■ For the same reasons, the trial court did not commit an abuse of discretion in refusing to order sanctions. Defendant argues the trial court erred in failing to order the State to produce the investigation reports to defendant and by failing to give defendant a continuance to investigate the reports. However, the failure to give defendant a continuance was not raised in the post-trial motion, although defendant did raise therein the issues of the failure to order the State to disclose and the failure to grant a mistrial. Therefore, the only issue raised on appeal which was properly preserved for review was whether the trial court erred by failing to order the State to disclose the documents following the *in camera* inspection. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.

When a discovery rule has been violated, the trial court has the discretion to impose sanctions. (*People v. Manzo* (1989), 183 Ill. App. 3d 552, 557-58, 539 N.E.2d 237, 240-41; 134 Ill. 2d R. 415(g).) Although the trial court's decision is given great deference, if the defendant has been prejudiced by the discovery violation and the trial court fails to eliminate the prejudice, a reviewing court will find an abuse of discretion. (*People v. Weaver* (1982), 92 Ill. 2d 545, 559, 442 N.E.2d 255, 260.) In the absence of prejudice to defendant, the failure to issue a sanction is not an abuse of discretion.

The final issue to be considered is whether the defendant's conviction for unlawful possession of cannabis must be reversed because the

subject cannabis was improperly admitted into evidence for the reason that the State failed to lay a proper chain of custody. A ruling on the admission of evidence will not be disturbed on appeal in the absence of an abuse of discretion by the trial court and a showing of prejudice to defendant. *People v. Arbo* (1991), 213 Ill. App. 3d 828, 833, 572 N.E.2d 417, 420.

Damery testified he was contacted by the United States Customs Service concerning a package containing cannabis. He determined the package was addressed to Mary Ann Radcliff, 1217 Orchard, apartment 2, Bloomington, Illinois. Damery received the package from customs in a locked, registry mail pouch on October 4, 1991. In the pouch was a large box, with a return address from Nigeria. The box contained a cylindrical object that was taped with cloth tape. Three corners of the package had been cut open. Inside the cylindrical object was a green leafy substance that field tested positive for cannabis. Damery then sent a letter addressed to Radcliff informing the addressee that the postal service had received a foreign mail package and that unsuccessful attempts had been made to deliver the package. The letter further advised that the postal service was holding the package for delivery and provided a phone number in St. Louis for the addressee to call. The letter was sent October 4, 1991.

Damery received a telephone call on October 7, 1991, concerning the package. The caller identified himself as Mike Radcliff and spoke with an accent and in broken English. Damery informed the caller that the package would be sent to Bloomington for delivery the next day. The caller requested delivery after 4 p.m., and Damery agreed to have a special delivery carrier deliver to 1217 Orchard after 4 p.m. When the package was not delivered, the same person called Damery on October 8, 1991. The caller stated he had been informed by the Bloomington post office that they did not have the package.

Damery then went to Bloomington, met with DCI agents to set up the controlled delivery, and proceeded to the Bloomington post office, positioning himself inside the claims office with the package. Defendant approached postal clerk Tim Adams and displayed identification. Adams retrieved the package from Damery and had defendant sign a receipt for the package. Adams delivered the package to defendant. As defendant left the post office, he was arrested in the parking lot.

Defendant does not contest the chain of custody from the time Damery received the package from customs. However, defendant argues the United States Customs Service seized this package prior to that time and that the State has failed to prove the chain of custody

between the seizure by customs and the receipt of the package by Damery.

When an actual object which had a direct part in an incident is produced at trial, it is referred to as "real evidence." (R. Hunter, Trial Handbook for Illinois Lawyers §49.1, at 695 (5th ed. 1983).) "The admission of real evidence is subject to showing that its condition is essentially the same as it was *at the time of the transaction in question.*" (Emphasis added.) (R. Hunter, Trial Handbook for Illinois Lawyers §49.2, at 696 (5th ed. 1983); see also *People v. Terry* (1991), 211 Ill. App. 3d 968, 972-73, 570 N.E.2d 786, 788.) There are two ways to establish that the object's condition is essentially the same at the time of the transaction. If the object is unique and readily identifiable and impervious to change, the item may be admitted on the unimpeached testimony of a witness that the object is the one in question and is substantially unchanged. *People v. Winters* (1981), 97 Ill. App. 3d 288, 289, 422 N.E.2d 972, 974.

The second way of establishing identity of the object and that it was unchanged is through proof of a chain of custody. This method is to be utilized if the object is not readily identifiable or is susceptible to alteration as a result of tampering or contamination. (*Winters*, 97 Ill. App. 3d at 289-90, 422 N.E.2d at 974.) It is not required that both methods of identification be utilized. *People v. Stewart* (1984), 105 Ill. 2d 22, 59, 473 N.E.2d 840, 858.

■ Defendant argues that there is a missing link in the chain of custody in this case. In essence, his point is that the package could have been tampered with prior to Damery receiving it. In his reply brief, defendant complains that all of the cases cited by the State involved situations where the object sought to be admitted was seized at or near the time of the arrest. However, the whole purpose of introducing the evidence and establishing the chain of custody is to connect the object to the defendant and the crime. (*People v. Maurice* (1964), 31 Ill. 2d 456, 458, 202 N.E.2d 480, 481; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 673, 424 N.E.2d 688, 695.) In this case, the crime charged was possession on October 8, 1991. There was no need to establish a connection between defendant and the package when it left Nigeria or when customs personnel intercepted it in New York. The State need only establish a connection between defendant and the package on October 8, 1991, which defendant concedes was properly done.

If defendant is suggesting that the package may have been tampered with before Damery received it and, therefore, that the State has failed to prove that defendant knew it contained cannabis, that el-

ement would not be established by a chain of custody. He could still argue he did not know what was in the package. However, that is a different issue than the one raised on appeal.

For the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

COOK and LUND, JJ., concur.