(No. 74582.

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANIEL VAUZANGES, Appellant.

*Opinion filed April 21, 1994.*

McMORROW, J., took no part.

HEIPLE, J., joined by HARRISON, J., concurring in part and dissenting in part.

Thomas Peters, of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Daniel Vauzanges, was charged by information in the circuit court of Cook County with the offense of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56$^1$/$_2$, par. 1401(a)(2)). The defendant filed a motion to quash the search warrant and the arrest or alternatively sought an evidentiary hearing at which the informant and his file would be produced. In his motion, the defendant attacked the veracity of the affidavit in support of the search warrant, and challenged the existence of the informant as well as the claim that the informant had purchased cocaine from the defendant. After an evidentiary hearing, the trial court denied the defendant's motions to quash the search warrant and arrest. The appellate court affirmed the trial court (No. 1—91—2160 (unpublished order under Supreme Court Rule 23)). We granted the defendant's petition for leave to appeal (134 Ill. 2d R. 315).

On November 17, 1987, a search warrant for apartment 7A located at 1255 W. Belden, Chicago, was issued in the circuit court of Cook County based upon an affidavit submitted by Officer Thomas Ptacek of the Chicago police department. In his affidavit, Officer Ptacek al-

leged that a reliable, confidential informant told him that he purchased cocaine on November 17, 1987, at 1255 W. Belden, apartment 7A. The informant was admitted into the apartment by "Dan," whom the informant described as a 24-year-old white male with brown hair, approximately 6 feet 4 inches tall, weighing 245 pounds. After negotiating the price, the informant purchased cocaine from "Dan" and then took the cocaine home where he ingested it. Although the warrant affidavit did not specify the time of the purchase, later testimony indicated that the purchase was made sometime in the morning before 10 a.m. Based on the information provided by the informant, Officer Ptacek confirmed that a multiunit building was located at 1255 W. Belden which matched the description provided by the informant.

In addition to the description of the alleged transaction, the affidavit also explained the prior relationship between Officer Ptacek and the informant. The affidavit stated, in pertinent part:

"This informant has provided me with information on three occasions in the past six months which resulted in the seizures of controlled substances and the arrest of three persons. The controlled substances seized on these occasions were submitted to the Chicago Police Lab. The results of the contraband tested revealed the contraband submitted were in fact controlled substances in violations of Illinois Law. The three cases are currently pending in the circuit court of Cook County."

Subsequently, on November 17, 1987, at approximately 6 p.m., Officer Ptacek executed the search warrant for apartment 7A at 1255 W. Belden. The defendant was placed under arrest after he was found to be in possession of a large quantity of cocaine, marijuana, and an unregistered firearm.

## PRETRIAL MOTIONS

Following his arrest and charge by information, the defendant filed motions to quash the search warrant

and the arrest, and to suppress the evidence. In the motion to quash the search warrant and arrest, the defendant alleged that the information contained in the affidavit pertaining to the existence of the informant and the cocaine purchase at his apartment was false. In support of his motion, the defendant submitted three affidavits. The defendant's affidavit stated that he did not sell or give away any cocaine on November 17, 1987, and that only Julie Dublinski and Ivan Gray visited his apartment that day. Julie Dublinski's affidavit stated that she was the only person with the defendant during a one-hour period prior to his arrest (*i.e.*, between 5 p.m. and 6 p.m.) and that the activities described by Officer Ptacek did not occur during the time she was in the apartment. Ivan Gray testified in his affidavit that when he visited the defendant at his apartment on the morning of November 17, 1987, the defendant refused his request to sell or give him cocaine.

Defense counsel argued that the affidavits raised a substantial preliminary showing entitling the defendant to an evidentiary hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The defendant also requested the production of the informant and police files on the informant. The trial court ordered a *Franks* hearing. Subsequently, the trial court ordered the State to produce the police files on the informant for the trial judge's *in camera* review.

At the *Franks* hearing, Officer Ptacek testified that the confidential informant had given him information on at least three prior occasions. In his past dealings with the informant, Officer Ptacek found the informant to be truthful and reliable. Because of the informant's past dealings with the police, the Chicago police department maintained a file on his activities.

Officer Ptacek testified that he was contacted by the informant sometime between 7 a.m. and 10 a.m. on

November 17, 1987. The informant told Officer Ptacek that the defendant, whom the informant knew as "Danny," had sold him cocaine. The informant provided the address to the defendant's apartment and described the multiunit apartment building. Prior to seeking the search warrant, Officer Ptacek testified that he went to the defendant's apartment building at approximately 10 a.m. to verify the address and the description provided by the informant. Officer Ptacek further conducted a utility check, which revealed that the defendant was Commonwealth Edison's electrical power subscriber to apartment 7A. Officer Ptacek also testified that the information given by the informant was corroborated by Officer Ptacek's on-going narcotics trafficking investigation of the defendant and others.

According to Officer Ptacek's testimony, the defendant had been under surveillance for approximately three months prior to his arrest. On November 7, 1987, the informant advised Officer Ptacek that the defendant had moved from his previous address and was living at 1255 W. Belden. Officer Ptacek investigated this address and found a 1963 Corvette with a "license applied for" sticker issued to the defendant. Ten days later, the informant again contacted Officer Ptacek with information which led to the issuance of the search warrant and the defendant's subsequent arrest. Officer Ptacek explained that he did not provide all the information he possessed in the complaint for the search warrant; rather, he gave only those facts relevant to establish the basis for the warrant. After Officer Ptacek's testimony, the defendant renewed his request for the State to produce the informant and the police files on the informant. The court, however, denied the defendant's motion.

The defendant then testified at the *Franks* hearing that, on November 17, 1987, he was visited in his apartment by Ivan Gray sometime between 10 a.m. and

12 p.m. and Julie Dublinski at approximately 4 p.m. The defendant stated that he did not give or sell cocaine to anyone on November 17, 1987.

Following the defendant's testimony, defense counsel again moved for the production of the informant. Asserting that the informant was nonexistent, defense counsel maintained that the defense had "established that there is that issue of perjury that would require production of the informant." The trial court denied the defendant's request for production, finding that "[a]t this point in time I do not find the testimony of the officer incredible, nor do I find that he has exhibited a reckless disregard for the truth."

Before continuing with the *Franks* hearing, the defendant requested production of the police files on the informant. The court responded: "I requested the State to give me those matters so I can have an *in camera* hearing. Since we're going through it, I would say your motion is premature." The defendant then presented the testimony of Julie Dublinski and Ivan Gray, which essentially reiterated the substance of their affidavits.

Next, the defendant filed a memorandum in support of an amended motion to quash the search warrant and the arrest. In the alternative, the defendant requested the trial court to order the State to produce the informant and/or produce the police files on the informant for an *in camera* examination or inspection. In the memorandum, the defendant points to supplemental affidavits from the defendant and Michael DeMaio. These affidavits asserted that Chris Evans had told the defendant and DeMaio that he was a government informant. In separate conversations, Evans explained to the defendant and DeMaio that he spoke with Officer Ptacek at a debriefing in the Federal building in Chicago. During this conversation, Officer Ptacek told Evans that the defendant probably would "weasel out of" his case because there was no informant.

Based on the testimony presented at the *Franks* hearing and the affidavits of the defendant and DeMaio, the defendant argued that Officer Ptacek lied about the existence of the informant. The trial court, however, denied the defendant's motion to quash the search warrant, and denied the defendant's motion to produce the informant at the *Franks* hearing. The trial judge previously stated: "[E]ven if the confidential informant were to testify I still don't feel the officer is not telling the truth."

## TRIAL

The defendant waived his right to a jury trial. The sole testifying witness at the bench trial was Officer Ptacek, who testified as to the defendant's arrest and the recovery of the cocaine, a triple-beam scale, and a shotgun from the defendant's apartment. The trial court sustained the State's objection to defense counsel's inquiry as to the identity of the confidential informant. On cross-examination, Officer Ptacek admitted that he had taken part in an interview of Evans, who was a government informant, at the Federal building and spoke with Evans regarding the defendant. Defense counsel then asked Officer Ptacek if he had told Evans that defendant was going to "weasel out" of the case. The State's objection was sustained by the trial court.

Following the State's case in chief, defense counsel requested production of the informant at trial, contending that the informant's testimony was "extremely relevant" to the defense because it would show that the defendant did not possess cocaine with the intent to deliver. That request was denied by the trial court. The defense did not present any witnesses. Following a finding of guilty of possession of a controlled substance with intent to deliver, the court denied the defendant's motion for a new trial and sentenced the defendant to six years' imprisonment.

Defendant appealed his conviction, asserting that the trial court erred in denying his motion to produce the confidential informant and the police files on the informant because the warrant contained uncorroborated statements, and that Officer Ptacek had lied in his sworn affidavit. The appellate court determined that the defendant was afforded a full *Franks* evidentiary hearing, at which the trial court could have, if it so chose, required the identification or production of the confidential informant. Deferring to the trial court's finding regarding Officer Ptacek's credibility, the appellate court refused to overturn the trial court's ruling.

The defendant's principal contention on appeal is that he was entitled to production of the informant and the police files on the informant at the *Franks* hearing. The defendant contends that he was entitled to such production, at least *in camera*. The defendant argues that, based on the testimony presented at the *Franks* hearing and the supplemental affidavits of the defendant and DeMaio, there was a question of whether Officer Ptacek lied about the existence of the informant. Because the trial court denied the defendant's request for the production of the informant and the police files on the informant, defendant was deprived of a fair *Franks* hearing.

The issue before this court is whether the trial court was required to compel the State to produce the informant, and/or the police files on the informant, during the *Franks* hearing. In resolving this issue, it is instructive to first examine the law surrounding a defendant's challenge to the veracity of the affidavit in a search warrant.

In *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the United States Supreme Court recognized that although there is a presumption of va-

lidity with respect to an affidavit supporting a search warrant, a defendant has a limited right to challenge the veracity of factual allegations made in a search warrant affidavit. The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (*Franks,* 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) The Court also found that the defendant's challenge must be to the representations of the affiant, and not to those of the informant. *Franks,* 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.

At the hearing, the defendant must establish that the affiant engaged in intentional perjury or acted with reckless disregard for the truth by a preponderance of the evidence. (*Franks,* 438 U.S. at 156, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) If, after a hearing, a defendant proves by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded from the trial to the same extent as if probable cause was lacking on the face of the affidavit. *Franks,* 438 U.S. at 156, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.

Although the *Franks* Court set forth the procedure a defendant must follow to challenge the veracity of an affidavit supporting a search warrant, the Court did not indicate whether, or under what circumstances, an informant or his police file should be produced once a *Franks* hearing has been granted. (*Franks,* 438 U.S. at

170, 57 L. Ed. 2d at 681, 98 S. Ct. at 2684.) This court likewise has not addressed the issue of the production of an informant or his police file during the *Franks* hearing. *People v. Lucente* (1987), 116 Ill. 2d 133, 150.

The Supreme Court has provided some guidance on this issue in its examination of the disclosure of an informant's identity. In *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, the Court examined the disclosure of an informant's identity in the context of a trial. The Court found that the public interest in protecting the flow of information to the government must be balanced against a defendant's need for disclosure in order to prepare his defense. (*Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 628-29.) The Court held that a trial court may require disclosure "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." (*Roviaro*, 353 U.S. at 60-61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628.) Since the confidential informant in the case was a material witness on the question of defendant's guilt or innocence, the Court concluded that failure of the trial court to require disclosure of the identity of the informer was reversible error. *Roviaro*, 353 U.S. at 64-65, 1 L. Ed. 2d at 647, 77 S. Ct. at 629-30.

Although *Roviaro* established a standard for disclosing the identity of an informant at trial, the Court subsequently distinguished the application of that standard in cases involving the disclosure of informants at pretrial hearings. In *McCray v. Illinois* (1967), 386 U.S. 300, 311-13, 18 L. Ed. 2d 62, 70-72, 87 S. Ct. 1056, 1062-64, the Court held that a trial court is not under an absolute duty to require disclosure of an informant's identity at a pretrial hearing, where the issue is one of probable cause for an arrest or search, and guilt or

innocence is not at stake. The Court recognized that disclosure at a preliminary hearing to determine the existence of probable cause for arrest or search is governed by different considerations from those that determine the necessity of disclosure when the informant is a material witness on the issue of the guilt or innocence of the defendant at the trial. As stated in *McCray*: " '[I]t should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer [the affiant] is a believable witness.' " *McCray*, 386 U.S. at 308, 18 L. Ed. 2d at 69, 87 S. Ct. at 1061, quoting *State v. Burnett* (1964), 42 N.J. 377, 385-88, 201 A.2d 39, 43-45.

In recent years, the Supreme Court has continued to support the position that due process does not mandate the disclosure of an informant's identity at a pretrial suppression hearing. In *United States v. Raddatz* (1980), 447 U.S. 667, 679, 65 L. Ed. 2d 424, 435, 100 S. Ct. 2406, 2414, the Court stated:

"[A]lthough the Due Process Clause has been held to require the Government to disclose the identity of an informant at trial, provided the identity is shown to be relevant and helpful to the defense, *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957), it has never been held to require the disclosure of an informant's identity at a suppression hearing. *McCray v. Illinois*, 386 U.S. 300 (1967). We conclude that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself."

In view of the aforementioned principles, we conclude that the Court distinguishes between the standard for disclosure of an informant's identity at trial as opposed to a preliminary hearing. (See also *People v. Williams* (1967), 38 Ill. 2d 150, 152-53.) Instead of applying the *Roviaro* standard propounded by the Court for the disclosure of an informant's identity at trial, the Court has supported the exercise of a discretionary stan-

dard by the trial court when considering whether or not disclosure of an informant's identity is warranted at a pretrial suppression hearing.

We adopt this discretionary standard in the context of the production of an informant and/or the police files on an informant during a *Franks* hearing. When a *Franks* hearing has been granted, the trial court may in its discretion require the production of the informant and/or the police files on the informant for an *in camera* examination or inspection, if under all the circumstances the trial court doubts the credibility of the police officer/affiant with respect to the existence of the informant. Based upon the trial court's findings at the *in camera* examination or inspection, the court may then exercise its discretion in deciding whether to order disclosure of the informant's identity to the defendant.

We note that the trial court is motivated by different concerns in exercising its discretion with respect to production of an informant as opposed to disclosure of an informant's identity. When considering whether to order the production of the informant and/or the police file for an *in camera* examination or inspection, the trial court is concerned with the existence of the informant and with maintaining the integrity of the judicial process. Conversely, when determining whether to disclose the identity of the informant, the trial court is concerned with a defendant's need for disclosure in order to prepare his defense. Therefore, production of an informant for an *in camera* examination should not be confused with disclosure of an informant's identity, since different concerns are at stake.

In the instant case, we must determine whether the trial judge abused his discretion in failing to review the police files on the informant during the *Franks* hearing. As previously stated, the trial judge found that Officer Ptacek was credible with respect to the existence of the informant.

The record reveals that Officer Ptacek's affidavit alleged that a confidential informant told him that he purchased cocaine from the defendant. However, the defendant's affidavit contradicted Officer Ptacek's affidavit with respect to the existence of the informant. In his affidavit, the defendant stated that on November 17, 1987, he was visited only by Julie Dublinski and Ivan Gray. More significantly, the defendant and DeMaio submitted affidavits which asserted that Evans, a government informant, stated that Officer Ptacek admitted that no informant existed and therefore the defendant probably would "weasel out of" his case.

After considering the defendant's affidavits, the trial court specifically instructed the State to produce the police files on the informant for an *in camera* inspection. By ordering an *in camera* inspection, the trial court was able to balance the interests of the State in protecting the secrecy of its informants and the competing interests of the defendant in ensuring against perjurious warrants. The record is unclear, however, whether the trial court ever received or reviewed those files. Under these particular circumstances, we conclude that the trial court may have abused its discretion if it found Officer Ptacek credible regarding the existence of the informant without first inspecting the police files on the informant. In support of this conclusion, we note that at trial the State had the opportunity to rebut the inference that no informant existed. Defense counsel specifically asked Officer Ptacek if he had told Evans that the defendant was going to "weasel out of" the case because there was no informant. The State, however, did not permit Officer Ptacek to answer. Therefore, the State did not introduce any evidence to rebut the defendant's claim that no informant existed.

Based upon the foregoing, the cause is remanded to the circuit court with directions that it clarify the rec-

ord as to whether it conducted an *in camera* review of the police files on the informant. The circuit court shall report the clarified record to this court within 60 days of issuance of this court's mandate. If the trial judge had inspected the police files and determined that an informant existed, the appellate court's judgment will be affirmed. However, if the trial judge did not review the police files on the informant, the judgments of the appellate and circuit courts shall be reversed and the matter will be remanded to the circuit court for further proceedings.

*Cause remanded with directions.*

JUSTICE McMORROW took no part in the consideration or decision of this case.

JUSTICE HEIPLE, concurring in part and dissenting in part:

With today's opinion, this court embraces a discretionary standard in the context of the production of an informant and/or the police files on an informant during a *Franks* hearing. With this result, I substantially agree. Because I feel the majority has misapplied the standard to the facts of this case, however, I write separately.

The facts of this case are simple. On November 17, 1987, a search warrant for defendant's apartment was issued in the circuit court of Cook County, based on an affidavit submitted by Officer Thomas Ptacek of the Chicago police department. In his affidavit, Officer Ptacek alleged that a reliable, confidential informant told him that he had purchased cocaine from someone named "Dan" at defendant's apartment.

Officer Ptacek executed the search warrant on the same day. After defendant was found to be in possession of a large quantity of cocaine, marijuana, and an unregistered firearm, defendant was placed under arrest.

Prior to his trial, defendant filed a motion to quash the search warrant and the arrest. In the alternative, defendant sought an evidentiary hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. In his motion, defendant attacked the veracity of the affidavit in support of the search warrant, and challenged the existence of the informant. The defendant also requested the production of the informant and police files on the informant.

The trial court ordered the *Franks* evidentiary hearing. At some point in the proceedings, the trial court also ordered the State to produce the police files on the informant for the trial judge's *in camera* review. It is unclear, however, whether the trial court ever received or reviewed these files.

At the *Franks* hearing, Officer Ptacek testified that he had dealt with the putative confidential informant on three prior occasions and that he had found the informant to be truthful and reliable. Officer Ptacek testified that the information that the informant gave in this case was accurate, and that the information was corroborated by Officer Ptacek's on-going narcotics trafficking investigation of defendant and others.

Defendant presented evidence that contradicted Officer Ptacek's affidavit and testimony with respect to the existence of the informant. Defendant testified that on November 17, 1987, only Ivan Gray and Julie Dublinski visited him in his apartment. Defendant stated that he did not give or sell cocaine to anyone on that day. In addition, defendant presented the testimony of Julie Dublinski and Ivan Gray, which corroborated his testimony.

Defendant also filed a memorandum in support of an amended motion to quash the search warrant and the arrest. In the alternative, defendant requested the trial court to order the State to produce the informant

and/or the police files on the informant for an *in camera* examination or inspection. In support of his motion, defendant drew the court's attention to supplemental affidavits from the defendant and Michael DeMaio. These affidavits stated that Chris Evans, a government informant, had told defendant and DeMaio that Officer Ptacek told Evans that defendant would probably "weasel out of" his case because there was no informant.

Based on the testimony presented at the *Franks* hearing and the affidavits of the defendant and DeMaio, defendant argued that Officer Ptacek lied about the existence of the informant. The trial court, however, denied the defendant's motion to quash the search warrant, and denied the defendant's motion to produce the informant at the *Franks* hearing. In reaching its decision, it is unclear whether the trial court ever reviewed the informant's police files.

On appeal, the appellate court affirmed.

On appeal to this court, defendant argues that he was entitled to production of the informant and the police files on the informant at the *Franks* hearing. Defendant argues that the informant should have at least been produced *in camera*.

In reviewing defendant's claim, the majority notes that neither the Supreme Court nor this court has addressed the exact issue involved in this case. That is, after a *Franks* hearing has been granted, when must a trial court require the production of the informant and/or the police files on the informant for an *in camera* examination. The majority concludes that the trial court may in its discretion require the production of the informant and or the informant's police files for an *in camera* inspection, "if under all the circumstances the trial court doubts the credibility of the police officer/ affiant with respect to the existence of the informant."

With this conclusion, I substantially agree. The

discretionary standard established today properly balances any concern the trial court may have regarding the existence of an informant, with the integrity of the judicial process.

After establishing this apt standard, however, the majority seems to falter in its application. Rather than remanding this case for an *in camera* inspection of the informant, the majority rephrases the issue to: "whether the trial judge abused his discretion in failing to review the police files on the informant during the *Franks* hearing." The majority concludes that "the trial court may have abused its discretion if it found Officer Ptacek credible regarding the existence of the informant without first inspecting the police files on the informant." Having made this determination, the majority then remands the cause for the trial court to clarify whether it conducted an *in camera* review of the police files on the informant or not.

In its resolution, however, the majority has misstated the relevant inquiry and misapplied the standard it has just established. The true issue in this case is not whether or not the trial court found Officer Ptacek credible without the police files; rather, the proper question is whether, under the facts of this case, sufficient doubts were raised as to the existence of the informant that the trial court should have required an *in camera* production of both the informant and the police files.

Under the circumstances of this case, the answer to this inquiry is a resounding yes. In this case, the defendant did not question the existence of a particular informant in the abstract. Rather, defendant argued that, even if this particular informant exists, he was not involved in this case. Given this situation, an examination of the police files, without more, is insufficient to meet defendant's challenge. Thus, contrary to the ma-

jority's implicit holding that an inspection of the police files would have sufficed to quell the trial court's reservations, the trial court should have interviewed the informant *in camera*.

During the proceedings, the trial court exhibited its doubt as to the existence of this particular informant when it stated that it wished to examine the informant's police files. Having acknowledged this doubt, the trial court should have convinced itself that this informant exists, that this informant has previously provided truthful and reliable information, and that this informant gave specific information concerning defendant which led to the issuance of the disputed search warrant. In failing to satisfy itself as to these issues, the trial court abused its discretion.

Under these circumstances, rather than remanding merely for a clarification of the record, this court should have remanded and ordered the trial court to hold an *in camera* inspection of both the informant and the police files. An *in camera* examination of the informant is the best, indeed, the only wholly reliable method to establish the fact of the informant's existence in this case or, alternatively, the lack thereof. Short of this examination, the court can never know for certain that the facts underlying the affidavit for the search warrant were true.

JUSTICE HARRISON joins in this partial concurrence and partial dissent.