COCHRANE'S OF CHAMPAIGN, INC., d/b/a Cochrane's, *et al.*,Plaintiffs-Appellees, v. ILLINOIS LIQUOR CONTROL COMMISSION, Defendants-Appellants.

Fourth District   No. 4—95—0472

Argued May 14, 1996.—Opinion filed December 9, 1996.

COOK, J., dissenting.

Rochelle A. Funderburg (argued), of Champaign, for appellant Daniel McCollum.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Jacqueline M. Zydeck (argued), Assistant Attorney General, of counsel), for appellant Illinois Liquor Control Commission.

J. Steven Beckett (argued) and Dedra L. Wright, both of Beckett & Webber, P.C., of Urbana, for appellees.

JUSTICE GARMAN delivered the opinion of the court:

Three bars in Champaign, Cochrane's, Cochrane's on Daniels, and Central Tap (licensees, collectively), were charged by the local liquor commissioner for the City of Champaign (local commissioner) with violating the Champaign Municipal Code (Champaign Municipal Code §§ 5—44(a), 5—44.1(a) (amended April 5, 1988)) by selling alcohol to persons under the age of 21. Central Tap was charged for violations on two separate occasions, making a total of four cases consolidated for purposes of this appeal. Each bar was found guilty and fined. A $100 fine was imposed on Central Tap for the violation of section 5—44 of the Champaign Municipal Code for sale of alcohol to a person between the ages of 18 and 21 on October 7, and $600 fines were levied on Cochrane's, Cochrane's on Daniels, and Central Tap for violating section 5—44.1(a) by selling alcohol to a person below the age of 18, on November 5, 6, and 10, respectively. The State Liquor Commission (Commission) affirmed the fines on appeal,

but on administrative review the circuit court reversed all of the fines, holding the result in each case was based on inadmissible hearsay. The Commission and local commissioner appeal.

The circumstances of each case are essentially the same. As part of a covert operation in 1993-94, persons under 21 were paid to enter the licensees' premises and attempt to purchase alcohol, accompanied by an undercover police officer. They were allowed to do so in each case. The undercover buyers did not testify at any of the hearings, however. Rather, each time the undercover officer who accompanied the buyer testified as to the events that took place in the establishment. Deputy Chief of Police John Gnagey and/or the accompanying officer then testified as to the buyer's age, which in every case but one was known only from reviewing the confidential source file, examining the minor's driver's license, speaking with the minor's parents, or some combination thereof. In the case against Central Tap for the events of November 10, Gnagey testified that he had personally known the buyer "since she was a baby," and knew her to be 17 at the time of the purchase, although he did verify her age by speaking with her parents and examining her driver's license. The age testimony was introduced over a hearsay objection in each case.

## I. ANALYSIS

There is no dispute that the age of the purchaser is an essential element of the ordinance violations with which the licensees were charged. See Champaign Municipal Code §§ 5—44(a), 5—44.1(a) (amended April 5, 1988). Accordingly, in any case in which the purchaser's age was not proved by competent evidence, the fine was improper. The licensees argue in support of the circuit court's decision that only inadmissible hearsay evidence was introduced to establish the ages in each case. Additionally, they argue their rights to due process and confrontation were violated in each case by the failure to produce the buyer. We will consider each of these contentions in turn.

### A. Hearsay

■ The Commission does not dispute that the officers' testimony as to the informants' ages was hearsay. Rather, it argues section 10—40 of the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/10—40 (West 1992)) applies to these proceedings through section 3—13 of the Liquor Control Act of 1934 (Liquor Act) (235 ILCS 5/3—13 (West 1992)), and the former allows admission of the hearsay evidence. Section 3—13 of the Liquor Act provides "[t]he provisions of [the Procedure Act], as now or hereafter amended, are hereby expressly adopted and incorporated herein as though a part

of this Act, and shall apply to all administrative rules and procedures of the State commission under this Act." 235 ILCS 5/3—13 (West 1992). Section 10—40(a) of the Procedure Act provides:

"The rules of evidence and privilege as applied in civil cases in the circuit courts of this State shall be followed. Evidence not admissible under those rules of evidence may be admitted, however, (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." 5 ILCS 100/10—40(a) (West 1992).

The Commission also argues the minors were "unavailable" because they were protected by the informer's privilege.

The licensees argue Rule 11(c) of the Rules of the Local Liquor Commissioner (Local Rule 11(c)) overrides the exception contained in the Procedure Act, making the hearsay testimony inadmissible. Local Rule 11(c) provides the "rules of evidence of the State of Illinois shall apply to the hearings held under Chapter 5 of The Municipal Code of Champaign." The State disputes that Local Rule 11(c) is more restrictive. It argues that while the rule does apply "the rules of evidence of the State of Illinois" to the instant proceeding, that term is intended to include the exception set forth in the Procedure Act.

■ State and local governments have concurrent jurisdiction of liquor control. *Town of Normal v. Seven Kegs*, 234 Ill. App. 3d 715, 718, 599 N.E.2d 1384, 1387 (1992). It is acceptable for a local rule to differ from a statute, so long as it is more restrictive than the statute or places additional requirements on licensees. *Sip & Save Liquors, Inc. v. Daley*, 275 Ill. App. 3d 1009, 1015-16, 657 N.E.2d 1, 5 (1995); *Easter Enterprises, Inc. v. Illinois Liquor Control Comm'n*, 114 Ill. App. 3d 855, 858-59, 449 N.E.2d 1013, 1016-17 (1983). We find Local Rule 11(c) is more restrictive than the Procedure Act and must be given effect.

■ The State's argument to the contrary is unconvincing. Section 10—40(a) of the Procedure Act merely states that the rules of evidence generally apply in administrative proceedings, then provides an exception, allowing in certain evidence "*not* admissible under *those rules of evidence.*" (Emphasis added.) 5 ILCS 100/10—40(a) (West 1992). It does not alter the rules of evidence, it creates an exception to them in certain contexts. It specifically recognizes that the evidence that it admits is not admissible under the rules of evidence. Local Rule 11(c), however, applies "[t]he rules of evidence." If the drafters of the local rule had wanted the exceptions contained in the Procedure Act to apply in their local proceedings, they certainly could have so provided, but this rule did not do so. Accordingly, the hearsay testimony of the police officers was barred.

■ Erroneous admission of hearsay is not grounds for reversal if there is sufficient competent evidence to support the decision. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 94, 606 N.E.2d 1111, 1120 (1992), quoting *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501, 415 N.E.2d 1249, 1253 (1980). In three of the four cases this rule does not affect the propriety of the circuit court's result, as there was no competent evidence of the purchasers' ages. However, in the proceeding involving the events of November 10, Gnagey testified he had personally known the purchaser since her birth and had merely spoken with her parents and examined her driver's license to verify her age. To the extent that his testimony was based on his personal knowledge, it was not hearsay. His testimony, based on his personal knowledge, constituted competent evidence, sufficient to support the local commission's result. Accordingly, the error in the introduction of the additional hearsay basis for his testimony was harmless in that case, and the circuit court's vacation of the $600 fine against Central Tap must be reversed.

## B. Informer's privilege

■ The licensees argue the failure to disclose the names of the undercover underage buyers violated their rights to due process and to confront witnesses against them. Due process must be given in administrative as well as judicial proceedings. *Abrahamson*, 153 Ill. 2d at 92, 606 N.E.2d at 1119. However, it is a flexible concept, and the extent of process due varies according to the particular situation. *Abrahamson*, 153 Ill. 2d at 92, 606 N.E.2d at 1119. Due process in the context of a hearing before an administrative agency includes the right to cross-examine adverse witnesses. *Abrahamson*, 153 Ill. 2d at 95, 606 N.E.2d at 1120; *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 408, 603 N.E.2d 489, 506 (1992). However, administrative proceedings are not criminal prosecutions and are not subject to the same safeguards and protections afforded in the latter. *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1030, 638 N.E.2d 736, 742 (1994). The informer's privilege is "arguably greater" in civil cases than in criminal. *Dole v. Local 1942*, 870 F.2d 368, 372 (7th Cir. 1989).

■ The licensees argue first that the privilege should not apply in this case because the "informants" were paid. This theory was implicitly rejected in *People v. Ofoma*, 242 Ill. App. 3d 697, 610 N.E.2d 738 (1993). *Ofoma* involved a paid informant (see *Ofoma*, 242 Ill. App. 3d at 703, 610 N.E.2d at 743), but this court upheld a criminal conviction despite nondisclosure of an informant's identity. *Ofoma*, 242 Ill.

App. 3d at 704, 610 N.E.2d at 743. Nor must the government show likelihood of reprisal to be entitled to the privilege. *Dole*, 870 F.2d at 372; *United States v. South Side Finance, Inc.*, 755 F. Supp. 791, 796 (N.D. Ill. 1991). The privilege is granted to the government as a matter of right, although it is qualified in that the party opposing it may overcome it by showing a genuine need for the information. *Dole*, 870 F.2d at 372-73; *South Side Finance*, 755 F. Supp. at 796.

It is up to the party opposing the privilege to demonstrate its need for disclosure, and the need must amount to more than a "mere desire to cross-examine." *People v. Sutton*, 260 Ill. App. 3d 949, 958, 631 N.E.2d 1326, 1333 (1994). The privilege will not yield for purposes of a mere "fishing expedition [citation], nor upon bare speculation that the information may possibly prove useful." *Dole*, 870 F.2d at 373. Here, the licensees do not indicate any way in which disclosure of the informants' identities might help them in preparing a defense. *Cf. People v. Vauzanges*, 158 Ill. 2d 509, 521, 634 N.E.2d 1085, 1090-91 (1994) (in which an officer's affidavit in support of a search warrant that a confidential informant told him he had purchased cocaine from the defendant on a certain date was contradicted by (1) affidavits of defendant and two other persons who stated they were the only people who visited him on the day in question and had not purchased cocaine, and (2) affidavits of defendant and another person which stated that another government informant told them that the officer had admitted to him that no informant existed, so the defendant would probably "weasel out" of his case). The licensees could perhaps have attacked the officers' testimony by testimony that there was always a bouncer checking identification (ID) at the door, or that ID's were always checked at the tables, which might have given the circuit court some reason to doubt the officers. They did not do so, however.

Whether to order disclosure is decided on a case-by-case basis, balancing the public interest in protecting informants against the right of the accused to prepare a defense. *Ofoma*, 242 Ill. App. 3d at 704, 610 N.E.2d at 743, citing *People v. Woods*, 139 Ill. 2d 369, 378, 565 N.E.2d 643, 648 (1990). The licensees were not entitled to disclosure of the informants' identities, as they did not show how that information could help them prepare a defense or give the circuit court any reason to doubt the officers. All they have alleged is that they will have difficulty mounting an effective defense without disclosure of the informants' identities. They allege no facts or even theories of how they could mount an effective defense if this information *were* disclosed.

The informer's privilege protects the undercover purchasers in

this case, and there was no error in the refusal to disclose their identities. This does not change our result, however, as the Commission has not cited, nor are we aware of, any authority for the proposition that the privilege will excuse failure to prove a case by competent evidence.

## II. CONCLUSION

We affirm the circuit court's vacation of the fines imposed by the local commission in all cases except the proceeding against Central Tap for the events of November 10 because the ages of the buyers, an essential element of the State's case, rested solely on inadmissible hearsay. In the latter case, we reverse and remand with directions to reinstate the fine assessed by the local commission because Gnagey's personal knowledge of the buyer's age constituted sufficient competent evidence to support the local commission's result.

Affirmed in part; reversed in part and remanded.

McCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent. I would reverse the decision of the circuit court and reinstate the decision of the Commission.

The majority holds that the age of the purchaser is an essential element of the violation which must be proved by "competent evidence," i.e., evidence that is not "inadmissible hearsay evidence." 285 Ill. App. 3d at 30.

It is difficult to prove a person's age without relying on hearsay evidence. A birth certificate is hearsay—an out-of-court statement offered to show the truth of the matter asserted therein. Only those present at the time of birth have firsthand knowledge of the event. The child, of course, has no independent recollection of his birth. The father may not be able to testify because he may not have been in the delivery room. Doctors and nurses would not be expected to remember the date after several weeks had passed. That leaves only the mother, and if she is unable to testify it may be impossible to prove a person's date of birth without using hearsay evidence.

The hearsay rule is noted for its flexibility, its exceptions, and proof of age requires more flexibility than do most areas of proof. There is an exception to the hearsay rule that allows age to be proved by a birth certificate. 410 ILCS 535/25(2), (6) (West 1994). There is another exception that allows a person to testify to his own age. People v. Pennell, 315 Ill. 124, 127, 145 N.E. 606, 607 (1924). There is no rea-

son flexibility must end with those two exceptions. In cases like the present, there should be no problem with proving age from a valid driver's license. A bartender is entitled to rely on the birth date shown on a driver's license. 235 ILCS 5/6—16a (West 1994) ("[a]dequate written evidence of age and identity of the person is a document issued by [any branch of government], including, but not limited to, a motor vehicle operator's license").

The majority properly concludes that the identity of the informants does not have to be disclosed. The majority would apparently allow the informants' ages to be proved by a birth certificate or by the informants' own testimony. Secrecy could be preserved by redacting the informants' identity on the birth certificate, or by the court reviewing the birth certificate or questioning the informant *in camera*, or by the court designating a third party to review the birth certificate or interview the informant. The last alternative may be preferable because then there would be a witness who could testify how the review or interview was accomplished. None of these alternatives would have been acceptable to defendants. Defendants insisted on learning the identity of the informants, an insistence that would have a chilling effect on future prosecutions using informants.

Allowing the deputy chief to testify to the birth dates shown on valid driver's licenses was a reasonable accommodation between the need to obtain accurate information of the informants' dates of birth and the need to prevent disclosure of the informants' identities. Additional steps could have been taken to verify the ages of the informants if that had been a real concern in this case. The majority improperly decides this case by labelling the evidence incompetent and inadmissible (285 Ill. App. 3d at 34) without considering whether the evidence should be incompetent and inadmissible. The majority decision is overly rigid in an area where flexibility is appropriate.