# Illinois Official Reports

## Appellate Court

---

### *People v. Matthews*, 2017 IL App (4th) 150911

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON MATTHEWS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0911 |
| Filed | December 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 14-CF-884; the Hon. John P. Schmidt, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Salome Kiwara-Wilson, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>John C. Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Thomas R. Dodegge, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE DeARMOND delivered the judgment of the court, with opinion.<br>Presiding Justice Turner and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    In August 2015, a jury found defendant Brandon Matthews guilty of one count of unlawful delivery of a controlled substance. The trial court sentenced him to 9½ years in prison.

¶ 2    On appeal, defendant argues (1) the trial court erred in admitting hearsay testimony, (2) the court erred in barring defense counsel from asking about the identity of the confidential source, (3) the court erred in requiring the jury to view videos in the courtroom during deliberations, and (4) certain fines improperly imposed by the circuit clerk should be vacated. We affirm in part and vacate in part.

¶ 3                              I. BACKGROUND

¶ 4    In September 2014, the grand jury indicted defendant on one count of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2014)), alleging he knowingly and unlawfully delivered to a confidential source more than 1 gram but less than 15 grams of a substance containing cocaine. Defendant pleaded not guilty.

¶ 5    Defendant's jury trial commenced in August 2015. Springfield police officer Timothy Zajicek testified he developed a plan for a confidential source to conduct a controlled drug buy on June 10, 2014. Zajicek stated the male individual had "previously provided information about criminal activity." Prior to the controlled buy, Zajicek searched the source and provided him with $500 in prerecorded funds. Zajicek also searched the source's vehicle and installed two covert video-recording devices.

¶ 6    Zajicek stated the source had arranged for the controlled buy to take place at a gas station. The source sat in the driver's seat, and Zajicek sat in the front passenger seat. While waiting for the seller to arrive, the source told Zajicek that the seller called and said he only had $400 worth of cocaine to sell. The seller arrived and sat in the rear passenger seat. The source and the seller engaged in an exchange, with the source receiving a Baggie of crack cocaine. Zajicek was unable to see the seller's face because he was sitting right behind him. After looking at the video from the hidden cameras, Zajicek identified the seller as defendant. The source drove away and then handed the Baggie of crack cocaine to Zajicek.

¶ 7    On cross-examination, Zajicek stated the video did not capture the actual drug transaction between defendant and the source, as the exchange took place "off-frame." Zajicek stated the video showed defendant's left hand, holding what appears to be a plastic Baggie, move forward and then back, with the Baggie no longer visible. Defense counsel asked Zajicek for the name of the source, but the trial court sustained the State's objection. Zajicek stated the source sought consideration on a traffic citation. The $400 in prerecorded funds was not recovered from defendant.

¶ 8    Kristin Stiefvater, a forensic scientist with the Illinois State Police, testified she conducted tests on an off-white chunky substance, which she found to be 4.9 grams of cocaine.

¶ 9    Following closing arguments, the jury retired to deliberate and later sent a note asking to view the video. The State indicated it had two views that could be shown. Defense counsel stated the jurors saw the video during the evidentiary portion of the trial, as well as during the State's closing argument, and they should abide by the instruction to rely on their memories

and notes. The trial court had the jury return to the courtroom to watch the videos. After the conclusion of the videos, the court directed the jury to return to the jury room to continue deliberating. The jury found defendant guilty.

¶ 10 In September 2015, defendant filed a posttrial motion, arguing, *inter alia*, the State failed to prove him guilty beyond a reasonable doubt and the trial court erred in barring the defense from learning the identity of the confidential source at trial. The court denied the motion.

¶ 11 At the October 2015 sentencing hearing, the trial court sentenced defendant to 9½ years in prison. The court also ordered defendant to pay a $2000 mandatory drug assessment, a $100 crime lab fee, a $100 Trauma Center Fund fee, a $5 Spinal Cord Injury Fund fee, a $25 Criminal Justice Information Projects Fund fee, a $20 Prescription Pill and Drug Disposal Fund fee, and a $490 street-value fine. The court awarded defendant $575 in presentence credit for 115 days spent in custody. This appeal followed.

¶ 12                                    II. ANALYSIS
¶ 13                                 A. Hearsay Testimony

¶ 14 Defendant argues the trial court erred in admitting hearsay testimony from Officer Zajicek over defense counsel's objection and in failing to conduct a hearing pursuant to *People v. Cameron*, 189 Ill. App. 3d 998, 546 N.E.2d 259 (1989), on the scope and need for the hearsay testimony.

¶ 15 Initially, we note defendant acknowledges trial counsel did not raise this issue in a posttrial motion. Thus, the issue is forfeited on appeal. See *People v. Hestand*, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005) (a defendant must object at trial and raise the issue in a posttrial motion to preserve the issue for review). Defendant, however, asks this court to review the issue as a matter of plain error.

¶ 16 The plain-error doctrine allows a court to disregard a defendant's forfeiture and consider unpreserved error in two instances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Belknap*, 2014 IL 117094, ¶ 48, 23 N.E.3d 325.

¶ 17 Under both prongs of the plain-error analysis, the burden of persuasion remains with the defendant. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015. As the first step in the analysis, we must determine whether any error occurred at all. *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272.

¶ 18 "The hearsay rule generally prohibits the introduction of an out-of-court statement offered to prove the truth of the matter asserted therein." *People v. Williams*, 238 Ill. 2d 125, 143, 939 N.E.2d 268, 278 (2010). "The fundamental reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant." *People v. Jura*, 352 Ill. App. 3d 1080, 1085, 817 N.E.2d 968, 973-74 (2004). Courts are often confronted with hearsay when police officers testify about their investigation of the defendant's alleged crime.

"A police officer may testify as to the steps taken in an investigation of a crime 'where such testimony is necessary and important to fully explain the State's case to the trier of fact.' [Citation.] '[O]ut-of-court statements that explain a course of conduct should be admitted only to the extent necessary to provide that explanation and should not be admitted if they reveal unnecessary and prejudicial information.' [Citation.] Testimony about the steps of an investigation may not include the *substance* of a conversation with a nontestifying witness." (Emphasis in original.) *People v. Boling*, 2014 IL App (4th) 120634, ¶ 107, 8 N.E.3d 65.

¶ 19   In *Cameron*, 189 Ill. App. 3d at 1004, 546 N.E.2d at 263, this court discussed the theory involving the admission of out-of-court statements to explain a course of police conduct and the danger of their misuse.

" 'In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.' " *Cameron*, 189 Ill. App. 3d at 1004, 546 N.E.2d at 263 (quoting Edward W. Cleary, McCormick on Evidence § 249, at 734 (3d ed. 1984)).

¶ 20   When confronted with this type of situation, we stated "the trial court must carefully assess such testimony to ensure that it does not include more than is necessary to explain police conduct." *Cameron*, 189 Ill. App. 3d at 1004, 546 N.E.2d at 263. The court can do this by conducting "a hearing out of the presence of the jury to determine both the *scope* of these third-party out-of-court statements and the *need* for the jury to hear them." (Emphases in original.) *Cameron*, 189 Ill. App. 3d at 1005, 546 N.E.2d at 264; see also *Boling*, 2014 IL App (4th) 120634, ¶ 115, 8 N.E.3d 65 (stating the trial court may conduct a *Cameron* hearing *sua sponte*). The court can then prevent the introduction of improper testimony, "thereby permitting the State to provide its legitimate explanations for police conduct, while protecting the defendant against prejudicial hearsay statements." *Cameron*, 189 Ill. App. 3d at 1005, 546 N.E.2d at 264.

¶ 21   In this case, defendant contends the trial court erred in admitting hearsay testimony from Officer Zajicek in two instances. In the first instance, the following exchange occurred between the prosecutor and Zajicek:

"Q. Now after installing the video equipment and looking in the car, what did you do?

A. We then proceeded to the location where the controlled buy was planned to have occurred.

Q. Where was that location?

A. At the Mobil gas station located on Stevenson Drive and Westlake Drive in Springfield, Illinois.

Q. Is that in Sangamon County?

A. Yes, it is.

Q. And how did you know to go there?

A. The [source] had arranged the controlled buy with the target and that was a location that the [source] was comfortable with."

Defense counsel then made a hearsay objection, which the court overruled.

¶ 22 We find no error in Officer Zajicek's answers. Zajicek simply explained the course of conduct he undertook in preparing for the controlled drug buy and in arriving at the location. See *People v. Simms*, 143 Ill. 2d 154, 174, 572 N.E.2d 947, 955 (1991) (stating "a police officer may testify about his conversations with others, such as victims or witnesses, when such testimony is not offered to prove the truth of the matter asserted by the other, but is used to show the investigative steps taken by the officer"). Moreover, Zajicek's answers did not relate the substance of any conversation with defendant but merely explained how he and the source ended up at the gas station.

¶ 23 Even if we found Zajicek's answers improper, we find defendant has failed to establish he was prejudiced. See *People v. Herron*, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005) (stating the defendant must prove the error was prejudicial under the first prong of the plain-error analysis); see also *People v. Shorty*, 408 Ill. App. 3d 504, 512, 946 N.E.2d 474, 482 (2011) ("The admission of hearsay evidence is harmless error where there is no reasonable probability that the jury would have acquitted defendant absent the hearsay testimony."). Here, Zajicek had already testified he worked to develop a plan for a controlled drug buy with the help of a confidential source on the day in question and they proceeded to the location where the buy was to take place. Zajicek did not say the source identified defendant as "the target." Instead, Zajicek testified an individual appeared at the location, an exchange occurred, and the individual left. After viewing the hidden-video footage, Zajicek later identified defendant as the individual who entered the car and made the exchange with the source. As the fact established by the contested testimony was established by other evidence, we find no prejudice.

¶ 24 In the second instance, the following exchange occurred:

"Q. When you got to the Mobil gas station here in Sangamon County, did anything in particular happen to change the plan?

A. While waiting for the target to arrive, the confidential source had attempted phone contact with the target and was initially unsuccessful. And later contact was made. I was advised by the [source] that the target—

MR. WYKOFF [(defense counsel)]: Objection, hearsay, Your Honor.

THE COURT: I need to hear what they're going to say first. Go ahead.

THE WITNESS: I was advised by the confidential source that the target had phoned him and told him that he only had $400 worth of cocaine to sell and not $500.

THE COURT: Just a minute. Overruled. Go ahead."

¶ 25 Here, while Zajicek did not say the source identified defendant, the testimony regarding the future sale of $400 worth of cocaine elicited by the prosecutor went beyond what was necessary to explain police conduct. Thus, it was hearsay, and the trial court erred when it overruled defense counsel's objection.

¶ 26 Now that we have found error in this instance, the next and only question centers on whether the evidence is closely balanced. *People v. Sebby*, 2017 IL 119445, ¶ 69. A defendant must show prejudice in "that the evidence is so closely balanced that the alleged

error alone would tip the scales of justice against him, *i.e.*, that the verdict 'may have resulted from the error and not the evidence' properly adduced at trial." *People v. White*, 2011 IL 109689, ¶ 133, 956 N.E.2d 379 (quoting *Herron*, 215 Ill. 2d at 178, 830 N.E.2d at 475). In conducting an analysis to determine whether the evidence was closely balanced, "a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53.

¶ 27 We find the evidence was not closely balanced in this case. The evidence indicated Zajicek searched the confidential source and provided him with prerecorded funds. The source drove to the buy location with Zajicek sitting in the front passenger seat. The seller arrived and sat in the rear passenger seat. The source and the seller engaged in an exchange, and the source received a Baggie of crack cocaine. After the seller left and the source drove away, the source handed the Baggie of crack cocaine to Zajicek. While the hidden video did not capture the hand-to-hand drug transaction, Zajicek was able to identify the seller as defendant. The State also presented evidence the off-white chunky substance was 4.9 grams of cocaine. Given the nature of the evidence, defendant cannot show the improper hearsay testimony severely threatened to tip the scales of justice against him.

¶ 28 Defendant argues that without the inadmissible hearsay, the State failed to prove the element of knowledge beyond a reasonable doubt. However, "[k]nowledge may be, and ordinarily is, proven circumstantially." *People v. Ortiz*, 196 Ill. 2d 236, 260, 752 N.E.2d 410, 425 (2001). "A sale of narcotics *** is always an intentional affirmative act, which, by its very nature, creates a reasonable inference that the seller knows the nature of the thing he is selling." *People v. Castro*, 10 Ill. App. 3d 1078, 1086, 295 N.E.2d 538, 544 (1973). Zajicek's testimony established defendant exchanged a Baggie of cocaine for $400 during a controlled drug buy. The jury could reasonably infer defendant knowingly and unlawfully delivered a controlled substance in this case. As the evidence was not closely balanced, plain error has not been established.

¶ 29                                    B. Confidential Source

¶ 30 Defendant argues the trial court erred in barring the defense from questioning Officer Zajicek about the identity of the confidential source. We disagree.

¶ 31 Illinois Supreme Court Rule 412(j)(ii) (eff. Mar. 1, 2001) provides "[d]isclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused." See also *People v. Criss*, 294 Ill. App. 3d 276, 280, 689 N.E.2d 645, 648 (1998) (noting "[t]he State may refuse to disclose the identity of law enforcement informants, so long as the nondisclosure will not deny an accused his constitutional rights"). "[T]he propriety of disclosing the informant's identity must be decided on a case-by-case basis, balancing the public interest in protecting informants against the right of the accused to prepare a defense." *People v. Ofoma*, 242 Ill. App. 3d 697, 704, 610 N.E.2d 738, 743 (1993).

> "Courts may consider several factors in applying this balancing test and determining whether fundamental fairness demands disclosure: '(1) whether the request for disclosure relates to the fundamental question of guilt or innocence rather than to the preliminary issue of probable cause; (2) whether the informant played an active role in the criminal act by participating in and/or witnessing the [event]; (3) whether the informant assisted in setting up its commission as opposed to being merely a tipster;

and (4) whether it has been shown that the informant's life or safety would likely be jeopardized by disclosure of his identity.' *** [Citation.]" *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 35, 991 N.E.2d 412.

See also *People v. Rose*, 342 Ill. App. 3d 203, 206, 794 N.E.2d 1004, 1006-07 (2003) ("When an informant is alleged to have participated in, witnessed, or helped to arrange the crime and disclosure will not jeopardize the informant's safety, the privilege will generally give way to a defendant's right to prepare his defense."). The defendant bears the burden of showing disclosure of the source's identity is necessary to help prepare his defense. *People v. Clark*, 2013 IL App (2d) 120034, ¶ 33, 987 N.E.2d 503.

¶ 32    Here, defense counsel asked Officer Zajicek for the identity of the confidential source. The State objected based on relevance and the need "for a formal hearing to decide whether or not disclosure is necessary for the case." At a sidebar conference, the following exchange occurred:

"THE COURT: Did you make a motion to disclose?

MR. WYKOFF: Not pretrial, Your Honor. But I didn't care about the confidential informant pretrial. Now that we are in trial, he enjoys the right to confront, which is a different right. I was at pretrial Your Honor, we are asking for disclosure, there's no guarantees that the matter is going to proceed to trial or anything of the sort. So there's—the State has a vested interest in preserving that identity. But once we fall within the confines of the trial, Your Honor, the defendant has an absolute right to confront the accuser on that point.

THE COURT: So the answer is no, you didn't file a pretrial motion?

MR. WYKOFF: No, I did not, Your Honor."

The court sustained the objection and stated "[w]e're not going to talk about the identity anymore."

¶ 33    We find defendant has failed to meet his burden to show disclosure of the source's identity was necessary to prepare his defense. While defense counsel argued defendant has a right to confront his accuser, defendant does not have an absolute right to learn the identity of a confidential source. Moreover, counsel undoubtedly had the State's discovery and was aware the informant was the source of the information contained in the answers given by Officer Zajicek. Section 8-802.3 of the Code of Civil Procedure (735 ILCS 5/8-802.3 (West 2014)) clearly provides the procedure for counsel to use when seeking the identity of a confidential source. Instead of raising this matter before trial, where both parties and the trial court could fully address the issue, counsel chose to raise it midtrial, when the court had to weigh the effects of a delay on the jury and the progress of the trial while attempting to make evidentiary rulings on the fly. It behooves us as a court of review to point out the inherent problems with such a tactic.

¶ 34    Counsel's explanation for waiting until midtrial was disingenuous at best. Counsel stated he "didn't care about the confidential informant pretrial," but at trial, defendant "enjoys the right to confront, which is a different right." What purpose do pretrial proceedings and pretrial discovery pursuant to Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) and Illinois Supreme Court Rule 413 (eff. July 1, 1982) have other than to prepare for trial? Using counsel's logic, the State had no need to tender discovery before trial since it was not relevant until then. It is difficult to believe counsel would not have realized the significance

of the confidential source's identity until trial. As counsel did not demonstrate the disclosure of the source's identity was necessary to prepare a defense or was beyond the desire to cross-examine, the trial court did not err in denying counsel's request to learn the source's identity from Officer Zajicek.

¶ 35                                   C. Jury Deliberations

¶ 36       Defendant argues the trial court committed reversible error when it required the jury to watch the surveillance video of the controlled drug buy during its deliberations while in the presence of the parties, court personnel, and the court. Although acknowledging he has forfeited this issue by failing to object at trial or raise it in a posttrial motion, defendant asks this court to review his claim under the second prong of the plain-error doctrine.

¶ 37       After the jury sent its note requesting to see the video and the discussion between the prosecutor and defense counsel, the trial court stated it would bring the jurors into the courtroom and "show them exactly what they saw in court again." After the jurors entered the courtroom, the court stated, in part, as follows:

> "What I will do is I've asked the State to play the two views of the video, the exact same thing you saw in court in evidence that is going to be played for you. We'll play one. When that is done, I will have them play the other. When that is done, I will take—have the deputy return you to the jury room to continue your deliberations."

After the video was played, the court stated:

> "Ladies and gentlemen, you have now seen the video as it was seen in the court yesterday, the exhibit. You now may return to the jury room and continue your deliberations."

¶ 38       Courts have found it "a basic principle of our justice system that jury deliberations shall remain private and secret." *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 17, 46 N.E.3d 274; see also *United States v. Olano*, 507 U.S. 725, 737 (1993). The sanctity of jury deliberations is a fundamental tenet of our criminal justice system. *United States v. Schwarz*, 283 F.3d 76, 97 (2d Cir. 2002). "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." *Olano*, 507 U.S. at 737-38; *Johnson*, 2015 IL App (3d) 130610, ¶ 17, 46 N.E.3d 274. "Although the presence of a third party impinges on the privacy and secrecy of deliberations, reversal is not warranted if no harm resulted from the intrusion." *Johnson*, 2015 IL App (3d) 130610, ¶ 17, 46 N.E.3d 274.

¶ 39       In *People v. Rouse*, 2014 IL App (1st) 121462, ¶ 67, 16 N.E.3d 97, the jury asked during deliberations to watch surveillance footage, and the trial court granted the request by having the jury view the video in the courtroom in the presence of both parties and the court. On appeal, the First District noted a trial court has discretion to grant or deny a jury's request to review evidence. *Rouse*, 2014 IL App (1st) 121462, ¶ 77, 16 N.E.3d 97. In that case, the trial court considered all reasonable alternatives in accommodating the jury's request, it stated the jury could view the recording as often as it wished, and it "cautioned the jury not to engage in deliberations or discussions while in the courtroom." *Rouse*, 2014 IL App (1st) 121462, ¶ 78, 16 N.E.3d 97. After noting no one communicated with the jurors during the viewing and they returned to the jury room to deliberate once the recording was shown, the First

District found the court's decision did not amount to an abuse of discretion, finding "no indicia of prejudice or anything improper having occurred during the replay of the surveillance footage." *Rouse*, 2014 IL App (1st) 121462, ¶ 79, 16 N.E.3d 97.

¶ 40   In *Johnson*, 2015 IL App (3d) 130610, ¶¶ 9-10, 46 N.E.3d 274, the jury asked to view a video during deliberations, and the trial court allowed it to watch the video in the courtroom with the court, the parties, and counsel present during the viewing. The parties were admonished not to verbally communicate with the jury during the viewing, and the jury retired to the jury room after the conclusion of the video. *Johnson*, 2015 IL App (3d) 130610, ¶ 20, 46 N.E.3d 274. On appeal, the Third District, with one justice dissenting, found the defendant failed to demonstrate the court's decision to allow the jury to view the video in the courtroom resulted in prejudice. *Johnson*, 2015 IL App (3d) 130610, ¶ 20, 46 N.E.3d 274. The majority noted "[n]othing in the record suggests that the judge, the prosecutor, or defense counsel affected the jury's ability to analyze the video evidence." *Johnson*, 2015 IL App (3d) 130610, ¶ 20, 46 N.E.3d 274. In a dissent, Justice McDade contended the jury's viewing of the video in the trial court's presence intruded on the private and secret nature of jury deliberations, which "compellingly justifie[d] a finding of presumed prejudice." *Johnson*, 2015 IL App (3d) 130610, ¶ 49, 46 N.E.3d 274 (McDade, P.J., dissenting).

¶ 41   In *People v. McKinley*, 2017 IL App (3d) 140752, ¶ 14, 74 N.E.3d 482, the defendant argued the trial court erred in allowing the jury, during deliberations, to view a video of a traffic stop in the courtroom and in the presence of the defendant, the attorneys, the judge, and the bailiff. Prior to viewing the video, the judge instructed the jurors that no one would make any additional comments about the video, there would be no questioning of the attorneys, and the jurors could " 'make whatever observations [they] would choose to make.' " *McKinley*, 2017 IL App (3d) 140752, ¶ 11, 74 N.E.3d 482. No one spoke to the jurors while the video was shown, and the judge stated if they had any further questions, they could provide them to the bailiff. *McKinley*, 2017 IL App (3d) 140752, ¶ 23, 74 N.E.3d 482.

¶ 42   In a fractured opinion, only Justice Carter found the court did not abuse its discretion. *McKinley*, 2017 IL App (3d) 140752, ¶ 23, 74 N.E.3d 482. In her specially concurring opinion, Justice O'Brien stated the court's requirement that the jury view the video in the courtroom and in the presence of the parties was improper. *McKinley*, 2017 IL App (3d) 140752, ¶ 35, 74 N.E.3d 482 (O'Brien, J., specially concurring). However, Justice O'Brien concurred in the majority's decision to affirm the defendant's conviction because the error did not rise to the level of plain error under either the first or second prongs. *McKinley*, 2017 IL App (3d) 140752, ¶ 36, 74 N.E.3d 482 (O'Brien, J., specially concurring). In a dissent, Justice Holdridge found the trial court's instruction lacked specificity and was confusing, and thus the "presumed prejudice *** justifie[d] a finding that the error was structural in nature." *McKinley*, 2017 IL App (3d) 140752, ¶ 44, 74 N.E.3d 482 (Holdridge, P.J., dissenting).

¶ 43   In this case, even if we agreed with defendant that the trial court erred in allowing the jury to view the video in the courtroom during deliberations, we find the alleged error does not rise to the level of structural error under the plain-error doctrine. We note our supreme court has "equated the second prong of plain-error review with structural error, asserting that 'automatic reversal is only required where an error is deemed "structural," *i.e.*, a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' [Citations.]" *People v. Thompson*, 238 Ill. 2d 598, 613-14, 939 N.E.2d 403, 413 (2010). "An error is typically designated as structural only if it necessarily

renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *Thompson*, 238 Ill. 2d at 609, 939 N.E.2d at 410. Structural errors have been found only in a limited class of cases, including those involving "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Thompson*, 238 Ill. 2d at 609, 939 N.E.2d at 411; see also *In re Samantha V.*, 234 Ill. 2d 359, 378-79, 917 N.E.2d 487, 499 (2009) (finding error under the second prong based on the trial court's failure to apply the one-act, one-crime rule); *People v. Walker*, 232 Ill. 2d 113, 131, 902 N.E.2d 691, 700 (2009) (finding error under the second prong based on the trial court's failure to exercise discretion in denying a continuance).

¶ 44 Defendant has failed to establish the alleged error in this case amounts to structural error, as the trial court's decision did not affect the fairness of defendant's trial and did not challenge the integrity of the judicial process. See *McKinley*, 2017 IL App (3d) 140752, ¶¶ 27, 36, 74 N.E.3d 482 (finding this issue did not amount to a structural error). While defendant asks this court to declare the alleged error here to be structural in nature, we find such a determination is best left to our supreme court. Accordingly, we hold defendant to his forfeiture of this issue.

¶ 45                    D. Fines Imposed by the Circuit Clerk

¶ 46 Defendant argues this court should vacate various fines improperly imposed by the circuit clerk. We agree.

¶ 47 This court has previously addressed the impropriety of the circuit clerk imposing judicial fines. See *People v. Larue*, 2014 IL App (4th) 120595, ¶¶ 55-73, 10 N.E.3d 959. "Although circuit clerks can have statutory authority to impose a fee, they lack authority to impose a fine, because the imposition of a fine is exclusively a judicial act." (Emphases omitted.) *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18, 18 N.E.3d 912. Thus, "any fines imposed by the circuit clerk are void from their inception." *Larue*, 2014 IL App (4th) 120595, ¶ 56, 10 N.E.3d 959. The propriety of the imposition of fines and fees presents a question of law, which we review *de novo*. *People v. Guja*, 2016 IL App (1st) 140046, ¶ 69, 51 N.E.3d 970.

¶ 48 In the case *sub judice*, the State concedes the following fines imposed by the circuit clerk must be vacated as void: (1) $50 for "Court Systems," (2) $10 for "Child Advocacy," (3) $15 for the "ISP OP Assistance Fund," (4) $5 for the "Drug Court Program," and (5) $100 for the "Victims Assist[ance] Fund." We agree and vacate these fines.

¶ 49                            III. CONCLUSION

¶ 50 For the reasons stated, we affirm in part and vacate in part. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 51 Affirmed in part and vacated in part.