NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220863-U

NO. 4-22-0863

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cass County |
| CHARLES R. MILLER, | ) | No. 22CF5 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Talmadge "Tad" Brenner, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding defendant failed to establish the occurrence of plain error and he was not denied the effective assistance of trial counsel.

¶ 2    Following a July 2022 jury trial, defendant, Charles R. Miller, was convicted of one count of unlawful possession of methamphetamine (720 ILCS 646/60(b)(2) (West 2022)), one count of unlawful possession of cannabis (720 ILCS 550/4(c) West 2022)), and one count of unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2022)). Prior to trial, defendant filed a motion to suppress any evidence obtained by the State during an allegedly unlawful traffic stop. The trial court subsequently denied the motion.

¶ 3    Defendant appeals, arguing the trial court erroneously denied his motion to suppress evidence because the officer lacked a reasonable suspicion to believe defendant was an

occupant of the stopped vehicle, the vehicle did not violate any traffic laws, and police unlawfully prolonged the stop beyond the time reasonably required to complete it. Defendant further contends the State failed to prove him guilty beyond a reasonable doubt and he was denied the effective assistance of counsel. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5         In January 2022, defendant was the sole passenger of a vehicle owned and operated by Natacha Deweese. During a traffic stop, police conducted a search of defendant's person and found a digital scale covered in a white crystalline residue, two small plastic bags, and approximately 38 grams of suspected cannabis. They also searched the vehicle defendant was riding in and located a burnt "bubble pipe," as well as a black film canister containing suspected methamphetamine between the front passenger seat and center console. As a result of that incident, the State charged defendant with one count of unlawful methamphetamine delivery (count I) (720 ILCS 646/55(a)(1) (West 2022)), one count of unlawful possession of methamphetamine (count II) (720 ILCS 646/60(b)(2) (West 2022)), one count of unlawful possession of cannabis (count III) (720 ILCS 550/4(c) West 2022)), and one count of unlawful possession of drug paraphernalia (count IV) (720 ILCS 600/3.5(a) (West 2022)).

¶ 6                               A. Motion to Suppress

¶ 7         In March 2022, defendant filed a motion seeking to suppress all physical evidence discovered during the search of Deweese's vehicle. Defendant asserted suppression was warranted because the seizure was not based upon a violation of section 11-804(b) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-804(b) (West 2022)), which requires motorists to signal an intention to turn not less than 100 feet before turning.

¶ 8        In April 2022, the matter proceeded to an evidentiary hearing on defendant's motion to suppress. At the outset of the proceeding, the parties introduced Deputy Tyler Rohlwing's patrol car footage of the traffic stop, which the trial court admitted as joint exhibit No. 1. The court then stated it had "watched the video from the start until the stop occurred" and asked whether it was necessary to review more of the footage. Defense counsel answered, "Not for purposes of this motion," and proceeded to call his first witness.

¶ 9        Deputy Rohlwing of the Cass County Sheriff's Office testified that on the night of January 19, 2022, he was equipped with binoculars and "staked out" approximately 400 feet from defendant's residence after receiving information drugs were being sold from the home. Further, Rohlwing testified he previously checked the department's "CAD system" which "has all the active warrants" and was aware defendant had an active warrant for his arrest. From his vantage point, Rohlwing could see a red sport utility vehicle (SUV) parked alongside a shed in a driveway and, after about 20 or 30 minutes, he observed the SUV's "dome lights" illuminate as two individuals left defendant's residence and walked towards it. Rohlwing testified he was familiar with defendant's overall physical characteristics after having "numerous" interactions with him at the residence, and one of the individuals matched defendant's sex and skin tone as well as his approximate height and weight. A short time later, the SUV pulled out of the driveway and, as it approached an intersection, Rohlwing stopped the vehicle after it signaled an intention to turn less than 100 feet from that intersection. Upon stopping the vehicle, Rohlwing testified defendant verbally identified himself as he did not have any identification with him and was subsequently placed under arrest for his outstanding warrant.

¶ 10        Defendant testified he was "checking to make sure everything was all right" at his house on the night of January 19, 2022, before leaving with Deweese. According to defendant,

he was not living there at the time and was instead residing at his aunt's house across the street. He acknowledged crossing the street with Deweese and also acknowledged getting into the red SUV. Although he denied having any previous encounters with Rohlwing, defendant stated he recognized Rohlwing's name from one of his arrest warrants.

¶ 11 Following arguments, the trial court denied the motion to suppress. In doing so, the court found it was undisputed that there was 100 feet available for the driver of the SUV to signal prior to stopping at the intersection. The court also noted, based on the plain language of section 11-804(b) of the Vehicle Code, "a violation, one way or the other, did occur. If the driver took a left-hand turn, then there was a violation that she turned without signaling a hundred feet. If she *** took a right, there is still a violation of simply leaving the turn signal on." Thus, the court found probable cause for the traffic stop on that basis. Further, the court found it reasonable for Rohlwing to infer the person he pulled over was defendant, noting Rohlwing's observations of a white male matching the "same build" and "same height" of defendant and "coming from a house that [Rohlwing] knew was [defendant's] house."

¶ 12 In June 2022, defendant filed a motion to reconsider the denial of his motion to suppress. The trial court held a hearing on the matter later that same month and, after hearing the parties' arguments, the court denied the motion to reconsider. In explaining its ruling, the court stated:

> "[T]he officer knew there was an active warrant *** he sat on the
> house that [defendant] occupied or was at quite frequently, a
> person matching his build, his facial hair, and just his personality
> came out of that and walked to a vehicle that was occupied by
> [defendant] at certain times. We're also talking about a community

- 4 -

*** that has about 650 people. *** So I believe it was reasonable at that time *** for the officer to have probable cause that [defendant] was that person, was occupying that vehicle, had an active warrant, and therefore the stop was reasonable."

¶ 13                                B. Jury Trial

¶ 14                                1. *Tyler Rohlwing*

¶ 15           In July 2022, the trial court conducted defendant's jury trial. Rohlwing testified that, on the night of January 19, 2022, he was conducting surveillance of defendant's residence after receiving information that methamphetamine was being sold from the home. After some time, Rohlwing observed two individuals leave defendant's house and get into a red SUV, which Rohlwing eventually stopped when he observed it commit a traffic violation. Rohlwing approached the passenger side of the SUV and identified the driver as Deweese after requesting to see her driver's license. Defendant, who was seated in the front passenger seat, verbally identified himself because he "didn't have his ID on him."

¶ 16           Once Rohlwing confirmed the status of defendant's warrant, he asked defendant to step out of the vehicle, placed him under arrest, and conducted a search of defendant's person. Rohlwling testified the search produced 38 grams of suspected cannabis, as well as a digital scale with a "white crystalline substance like residue" on it and two "plastic baggies" typically used in the weighing and packaging of narcotics. Regarding the suspected cannabis, Rohlwing testified "it smelled like weed, it looked like weed," and defendant "advised [him] that it was weed." Rohlwing then seated defendant in his patrol car and radioed Jeff Smith, the canine officer, who "arrived on scene a short time later." Upon his arrival, Smith "approached the driver's side of the vehicle to speak with [Deweese]" and, based on that conversation, the deputies "learned that

there was open cannabis inside of [her] purse[,] so a probable cause search was conducted of the vehicle." Rohlwing testified Deweese was then removed from the vehicle and detained. Ultimately, the search of the vehicle produced a "bubble pipe" and a black film container located beneath a blue handkerchief in between the front passenger seat and center console. According to Rohlwing, the "bubble pipe" was "very burnt on the bottom" as if it had been used multiple times and was commonly associated with smoking methamphetamine. He further testified there were "two small baggies containing a white crystalline substance" inside of the film canister, which he suspected to be methamphetamine.

¶ 17                                    2. *Kyle Dodson*

¶ 18          Deputy Kyle Dodson of the Cass County Sheriff's Office testified he was Rohlwing's assisting officer on January 19, 2022. After Rohlwing stopped Deweese's SUV, Dodson approached the driver's side of the vehicle. Although he "did not have eyes on Miss Deweese the entire time," Dodson testified that while he was standing next to the driver's side, he could see inside the vehicle and did not observe Deweese make any movements or move anything on the passenger side of the vehicle. After defendant exited the SUV, Dodson "moved to the passenger side of the vehicle," where Deweese "probably did not know [he] was there until [he] had moved up closer to the passenger side door." Again, Dodson testified he could see inside the vehicle and did not observe Deweese move or place anything on the passenger side of the vehicle.

¶ 19                                    3. *Natacha Deweese*

¶ 20          Deweese testified she had known defendant approximately "nine or ten" years and was "a personal assistant to his aunt." On the night of January 19, 2022, Deweese was "taking care of [defendant's] aunt" and eventually left with defendant to go visit her cousin.

Before leaving, Deweese testified she saw "two police over on the corner, like just sitting there." She further stated, "when [defendant] got into my vehicle I told him—he's a known drug addict—I told him if you have anything on you, you need to get out because there's cops right there and he got in anyways." Defendant told her he "didn't have anything on him." According to Deweese, "[a]s soon as [they] took off the police pulled [them] over," and she further testified she saw defendant throw a "ball of stuff" into the seat as he exited the vehicle. Deweese denied moving any of the items defendant threw. She also acknowledged receiving a "marijuana ticket" that night as well as a traffic citation.

¶ 21    Following the presentation of evidence, the trial court read several stipulations to the jury. In relevant part, the court read:

> "The parties hereby stipulate to the following: That Josh Stern is a forensic scientist employed at the Illinois State Police Crime Lab and he is an expert in the field of chemistry and narcotics analysis. *** Josh Stern would testify that he examined People's Exhibit Number 3 containing two plastic baggies with 6.2 grams of a substance inside. Josh Stern would testify that he chemically analyzed the substance *** and in his expert opinion believed the substance to be methamphetamine."

Ultimately, the jury found defendant guilty of unlawful possession of methamphetamine, unlawful possession of cannabis, and unlawful possession of drug paraphernalia, as alleged in counts II-IV.

¶ 22    This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, defendant asserts three claims of error: (1) the trial court erred by denying his motion to suppress evidence, (2) the State failed to prove him guilty beyond a reasonable doubt, and (3) he was denied the effective assistance of counsel. Defendant acknowledges he did not properly raise the first two issues before the trial court but asks us to consider them as plain error or, alternatively, ineffective assistance of counsel. We address each of defendant's arguments in turn.

¶ 25                                    A. Standing

¶ 26    As a threshold issue, the State asserts that because defendant was a "mere passenger" of Deweese's vehicle, he has no legitimate expectation of privacy in the vehicle and therefore lacks standing to challenge the search of the vehicle. On this point, we disagree with the State.

¶ 27    "The fourth[-]amendment protection against unreasonable government search and seizure extends only to individuals who have a reasonable expectation of privacy in the place searched or property seized." *People v. Johnson*, 114 Ill. 2d 170, 191, 499 N.E.2d 1355, 1364 (1986). In other words, "[f]ourth-amendment rights are personal, and the government violates a defendant's fourth-amendment rights by invading the defendant's own legitimate expectation of privacy." (Emphasis omitted.) *People v. Ferris*, 2014 IL App (4th) 130657, ¶ 43, 9 N.E.3d 1126 (citing *United States v. Payner*, 447 U.S. 727, 731 (1980)).

¶ 28    "[T]he general rule is that a passenger lacks standing to challenge a search of another's car unless the passenger had a legitimate expectation of privacy in the place searched." *People v. McCoy*, 269 Ill. App. 3d 587, 592, 646 N.E.2d 1361, 1365 (1995). However, as a person "seized" during a traffic stop, a passenger has "standing to challenge a *stop's* constitutionality." (Emphasis added.) *Arizona v. Johnson*, 555 U.S. 323, 332 (2009). Further, an

initially lawful traffic stop can become unlawful "if it is prolonged beyond the time reasonably required to complete the traffic stop." (Internal quotation marks omitted.) *People v. Harris*, 228 Ill. 2d 222, 235, 886 N.E.2d 947, 956 (2008).

¶ 29 On appeal, defendant is not challenging the search of Deweese's vehicle as unlawful. Rather, he is challenging his own seizure and detention as an occupant of the stopped vehicle on the bases that police lacked reasonable suspicion to justify stopping the vehicle and the stop was excessive in duration, therefore resulting in a violation of his fourth-amendment rights (see U.S. Const., amend. IV). He has standing to make these claims.

¶ 30                                 B. Plain Error

¶ 31                                 1. *The Motion to Suppress*

¶ 32 Defendant first argues the trial court erred in denying his motion to suppress. Specifically, he asserts the court should have suppressed the evidence found during the search of Deweese's vehicle because Rohlwing did not have a reasonable suspicion defendant was a passenger of the red SUV. He further contends the court erroneously denied his motion to suppress because the vehicle he was riding in did not violate any traffic laws and, even if the initial stop was proper, the evidence found in the SUV should still be suppressed because the police improperly prolonged the traffic stop to wait for a canine unit to arrive.

¶ 33 "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The doctrine, however, serves as a narrow and limited exception to the general rule of procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 733, 931 N.E.2d 1249, 1255 (2010). This court may review unpreserved issues under the plain-error doctrine, which we have explained as follows:

"The plain-error doctrine allows a court to disregard a defendant's

forfeiture and consider unpreserved error in two instances:

'(1) where a clear or obvious error occurred and the evidence is so

closely balanced that the error alone threatened to tip the scales of

justice against the defendant, regardless of the seriousness of the

error and (2) where a clear or obvious error occurred and that error

is so serious that it affected the fairness of the defendant's trial and

challenged the integrity of the judicial process.' " *People v.*

*Matthews*, 2017 IL App (4th) 150911, ¶ 16, 93 N.E.3d 597

(quoting *People v. Belknap*, 2014 IL 117094, ¶ 48, 23 N.E.3d 325).

¶ 34　　　　Defendant asserts his claim is cognizable under the first prong of the plain-error

doctrine. "Under the first prong of plain-error analysis, '[w]hat makes an error prejudicial is the

fact that it occurred in a close case where its impact on the result was potentially dispositive.' "

*People v. Stevens*, 2018 IL App (4th) 160138, ¶ 71, 115 N.E.3d 1207 (quoting *People v. Sebby*,

2017 IL 119445, ¶ 68, 89 N.E.3d 675). "Thus, for purposes of the first prong, the claimed

error—substantial or not—has to be *of such a nature* that it might have tipped the scales against

the defendant." (Emphasis in original.) *People v. Ely*, 2018 IL App (4th) 150906, ¶ 18, 99 N.E.3d

566. "In determining whether the evidence adduced at trial was close, a reviewing court must

evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it

within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53.

¶ 35　　　　"Under both prongs of the plain-error analysis, the burden of persuasion remains

with the defendant. [Citation.] As the first step in the analysis, we must determine whether any

error occurred at all. [Citation.]" *Matthews*, 2017 IL App (4th) 150911, ¶ 17. "If error did occur,

we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272.

¶ 36        When a defendant moves to suppress evidence, we apply a two-part test. *People v. Kadow*, 2021 IL App (4th) 190103, ¶ 22, 182 N.E.3d 814. We review the trial court's factual findings under the deferential manifest-weight-of-the-evidence standard, rejecting them only "if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Chatman*, 2022 IL App (4th) 210716, ¶ 47, 203 N.E.3d 456. "However, a court of review is permitted to undertake its own assessment of the facts and draw its own conclusions when deciding what relief, if any, should be granted." *Kadow*, 2021 IL App (4th) 190103, ¶ 22. Although we give substantial deference to the factual findings of the trial court, "[w]e remain free *** to decide the legal effect of those facts, and we review *de novo* the trial court's ultimate ruling on the motion." *People v. Lindsey*, 2020 IL 124289, ¶ 14, 181 N.E.3d 1.

¶ 37                              a. Reasonable Suspicion

¶ 38        "Vehicle stops" for even minor traffic violations "are subject to the fourth amendment's reasonableness requirement" because they amount to seizures of the persons in the car. *People v. Hackett*, 2012 IL 111781, ¶ 20, 971 N.E.2d 1058; see *People v. Jones*, 215 Ill. 2d 261, 270, 137, 830 N.E.2d 541, 549 (2005). Generally, a vehicle stop is considered reasonable when a police officer has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). But because "[t]he United States Supreme Court has observed that the usual traffic stop is more analogous to a *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] investigative stop than to a formal arrest," police officers may also stop a vehicle and detain its occupants based on reasonable suspicion—articulable, specific facts (and the rational inferences

- 11 -

therefrom)—that suggest a crime has been or is about to be committed. *Jones*, 215 Ill. 2d at 270; *Hackett*, 2012 IL 111781, ¶ 20. Moreover, a reasonable belief an individual in a vehicle has an outstanding warrant for their arrest justifies a brief, investigatory stop of the vehicle. *People v. Safunwa*, 299 Ill. App. 3d 707, 711, 701 N.E.2d 1202, 1204 (1998).

¶ 39    Here, Rohlwing, whom the trial court found was not acting in bad faith, did not need to be absolutely certain the passenger in Deweese's vehicle was defendant. "Sufficient probability, rather than certainty, is the touchstone of reasonableness under the fourth amendment" (*Safunwa*, 299 Ill. App. 3d at 711), and the court found Rohlwing provided sufficient articulable facts justifying the stop of the vehicle. According to Rohlwing's testimony, on the night of January 19, 2022, he was conducting surveillance of defendant's residence after receiving information that drugs were being sold from the home. Despite being parked approximately 400 feet from the residence, Rohlwing was equipped with binoculars and observed the "dome lights" of a red SUV illuminate as two people left defendant's residence and walked toward it. Based on his "numerous" encounters with defendant at the residence previously, Rohlwing was familiar with defendant's overall physical characteristics, and he testified one of the individuals matched defendant's sex, skin tone, and build. The court agreed the appearances of the male individual crossing the street and defendant were similar, noting it was not unreasonable for Rohlwing to have recognized defendant in a 650-person community. The court also credited Rohlwing's testimony that he knew defendant had an active warrant for his arrest and, having concluded the suspicions of Rohlwing were reasonable under the circumstances, found the stop justified on that basis.

¶ 40    Because the evidence does not clearly lead us to the opposite conclusion reached by the trial court, its denial of defendant's motion to suppress was not against the manifest

weight of the evidence. *Chatman*, 2022 IL App (4th) 210716, ¶ 47. Therefore, our plain-error analysis need go no further. See *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213 ("[W]ithout error, there can be no plain error." (Internal quotation marks omitted.)). "Additionally, the absence of error nullifies any ineffective assistance of counsel argument because counsel's performance is not deficient for failing to raise a meritless issue." *People v. Stone*, 2018 IL App (3d) 160171, ¶ 20, 100 N.E.3d 672.

¶ 41        Having found Rohlwing's stop of Deweese's vehicle justified on this basis, we need not consider defendant's second contention that the trial court should have granted his motion to suppress because there was no traffic violation justifying the stop. See *People v. Hill*, 2019 IL App (4th) 180041, ¶ 18, 123 N.E.3d 1236 (finding an officer is not required to justify a stop of a vehicle based on any suspicion of unlawful behavior when the officer reasonably believes an occupant of the vehicle to be subject to arrest). Likewise, any ineffective-assistance argument is vitiated because counsel's performance cannot be deficient for failing to raise a meritless issue. *Stone*, 2018 IL App (3d) 160171, ¶ 20.

¶ 42        b. Whether the Investigatory Detention Was Unreasonably Prolonged

¶ 43        The tolerable duration of a traffic stop or investigatory detention "is determined by the seizure's 'mission,' " and a stop or detention "may last no longer than is necessary to effectuate th[at] purpose." (Internal quotation marks omitted.) *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). However, an officer may prolong the detention and expand the scope of the stop if he develops a reasonable suspicion of further illegal activity beyond that which prompted the initial stop. *People v. Baldwin*, 388 Ill. App. 3d 1028, 1035, 904 N.E.2d 1193, 1199 (2009). Additionally, "the police must have reasonable suspicion to justify detaining someone for a dog sniff." (Emphasis omitted.) *People v. Thomas*, 2018 IL App (4th) 170440,

¶ 56, 115 N.E.3d 325. "While reasonableness requires diligence in completing a traffic stop, it does not require inhuman, machine-like efficiency, such that the traffic stop is completed as fast as possible, down to the second." *People v. Drain*, 2023 IL App (4th) 210355, ¶ 48.

¶ 44      First, it is well-settled that "invited errors are not subject to plain-error review." *People v. Ramirez*, 2013 IL App (4th) 121153, ¶ 79, 936 N.E2d 1227. "Where a defendant's counsel has specifically asked the trial court to proceed in a particular manner, '[t]he doctrine of invited error blocks [the] defendant from raising th[e] issue on appeal, absent ineffective assistance of counsel.' " *People v. Brown*, 2023 IL App (4th) 220400, ¶ 31 (quoting *People v. Henderson*, 2016 IL App (1st) 142259, ¶ 210, 77 N.E.3d 1046). Here, after stating it had "watched the video from the start until the stop occurred," the trial court asked whether there was any need to review more of the dashcam footage. Defense counsel answered, "Not for purposes of this motion," and proceeded to call his first witness. As a result, the duration of the stop was not the focus of the suppression hearing and facts relevant to the issue were not the focus of the parties or the court. Further, the State was not given the opportunity to present evidence or testimony in response to this specific claim. See *People v. Hughes*, 2015 IL 117242, ¶ 38, 69 N.E.3d 791 ("[N]ew factual theories on appeal deprive the formerly prevailing party of the opportunity to present evidence on that point."). Given these circumstances, the doctrine of invited error, not forfeiture, precludes defendant's claim.

¶ 45      Nor was trial counsel's failure to raise this issue in the motion to suppress ineffective assistance. As stated above, Deweese's SUV was not stopped until after the police developed a reasonable, articulable suspicion defendant was an occupant of the vehicle and subject to arrest. The "mission" of that seizure expanded when, according to the patrol car footage, Rohlwing's search of defendant incident to his arrest produced a bag of suspected

- 14 -

cannabis, a digital scale, and plastic bags containing suspected drug residue. Rohlwing then asked Deweese if she would consent to a search of the vehicle. She refused. Approximately eight minutes later, the canine unit arrived. Under these circumstances, the officers' investigatory detention was not unreasonably prolonged as the officers had a reasonable suspicion defendant and Deweese were in possession of contraband. Accordingly, counsel cannot be deemed ineffective for failing to raise this meritless issue. See *Stone*, 2018 IL App (3d) 160171, ¶ 20.

¶ 46                                    2. *Sufficiency of the Evidence*

¶ 47            Next, defendant argues the State failed to prove beyond a reasonable doubt he possessed the methamphetamine and "bubble pipe" recovered from Deweese's vehicle. We note defendant, citing his failure to include this claim in a posttrial motion, urges us to review the claim under the first prong of the plain-error doctrine. However, "when a defendant makes a challenge to the sufficiency of the evidence, his or her claim is not subject to the [forfeiture] rule and may be raised for the first time on direct appeal." *People v. Woods*, 214 Ill. 2d 455, 470, 828 N.E.2d 247, 257 (2005). Therefore, we review defendant's claim on the merits without addressing the plain-error doctrine.

¶ 48            "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Sauls*, 2022 IL 127732, ¶ 52. It is not a function of this court to retry a defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69, 115 N.E.3d 205. Rather, it is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to

draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338, 739 N.E.2d 455, 472 (2000).

¶ 49　　　According to our supreme court, a jury can consider inferences which flow from the evidence before it and need not search out explanations consistent with innocence and then raise those explanations to a level of reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24, 120 N.E.3d 948. "[A] trier of fact is allowed to consider the evidence in light of his or her own knowledge and observations in the affairs of life." *Newton*, 2018 IL 122958, ¶ 28. This court will not reverse a conviction "unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Sauls*, 2022 IL 127732, ¶ 52.

¶ 50　　　Section 60(a) of the Methamphetamine Control and Community Protection Act provides "[i]t is unlawful knowingly to possess methamphetamine or a substance containing methamphetamine." 720 ILCS 646/60(a) (West 2022). Additionally, a person commits unlawful possession of drug paraphernalia when he "knowingly possesses an item of drug paraphernalia with the intent to use it in ingesting, inhaling, or otherwise introducing a controlled substance into the human body, or in preparing a controlled substance for that use." 720 ILCS 600/3.5(a) (West 2022). In determining whether the defendant intended to use the paraphernalia, the trier of fact "may take into consideration the proximity of the controlled substances to drug paraphernalia or the presence of a controlled substance on the drug paraphernalia." 720 ILCS 600/3.5(b) (West 2022).

¶ 51　　　Possession may be actual or constructive and is often proved with circumstantial evidence. *People v. Love*, 404 Ill. App. 3d 784, 788, 937 N.E.2d 752, 756 (2010). Circumstantial evidence does not require each link in the chain of circumstances be proven beyond a reasonable doubt; it is sufficient if all the evidence, considered collectively, satisfies the trier of fact beyond

a reasonable doubt that the defendant is guilty. *People v. Hall*, 194 Ill. 2d 305, 330, 743 N.E.2d 521, 536 (2000). Constructive possession—which is at issue—exists where a defendant has the intent and capability to maintain control and dominion over the contraband, and it may be proved with evidence the defendant had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found. *Love*, 404 Ill. App. 3d at 788. "Exclusive" control may be sole or joint. *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 65, 55 N.E.3d 117. Knowledge may be inferred from the surrounding circumstances, including the defendant's actions, declarations, or other conduct, which indicate the defendant knew of the contraband's presence in the place it was found. *People v. McLaurin*, 331 Ill. App. 3d 498, 502, 772 N.E.2d 296, 300 (2002).

¶ 52       Applying these principles to the instant case, we do not find the evidence so unsatisfactory, improbable, or unreasonable as to create a reasonable doubt of defendant's guilt. Rohlwing testified he searched defendant and found a digital scale with a "white crystalline substance like residue" on it and two "plastic baggies" typically used in the weighing and packaging of narcotics. Likewise, the search of the vehicle produced a "bubble pipe" and "two small baggies containing a white crystalline substance" inside a black film canister located beneath a blue handkerchief between the passenger seat and center console. According to Rohlwing, the "bubble pipe" was "very burnt on the bottom" as if it had been used many times and was commonly associated with smoking methamphetamine. Stern, a forensic scientist and expert in chemistry and narcotics analysis, chemically analyzed the substance found in the film canister and concluded that it was methamphetamine.

¶ 53       Further, the location in which the film canister and "bubble pipe" were found was mere inches from where Deweese testified she had seen defendant throw a "ball of stuff."

Deweese also denied moving any of the items defendant threw, and Dodson testified he did not see Deweese make any movements or place anything on the passenger side of the vehicle while he observed her. It is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *Williams*, 193 Ill. 2d at 338. A reasonable finder of fact could infer from defendant's action of throwing a "ball of stuff" toward the area between the passenger seat and the console that he knew the drugs and "bubble pipe" existed in the location where they were found. Further, it could reasonably be inferred defendant attempted to conceal the contraband when he made the throwing motion, which supports a finding he intended to divest himself of his control over it. See *McLaurin*, 331 Ill. App. 3d at 503 (hiding items of contraband indicates an intent to exercise control over them).

¶ 54    Viewing the evidence in the light most favorable to the prosecution, which we must, we conclude the evidence allowed a rational trier of fact to find defendant guilty of unlawfully possessing drug paraphernalia and methamphetamine via constructive possession. Consequently, defendant's alternative claim that trial counsel's failure to raise this issue in a posttrial motion constituted ineffective assistance must fail because counsel cannot be deemed ineffective for failing to raise a meritless issue. *Stone*, 2018 IL App (3d) 160171, ¶ 20.

¶ 55                    C. Ineffective Assistance

¶ 56    Finally, defendant contends he was denied the effective assistance of his trial counsel because counsel failed to object to the State's use of allegedly prejudicial character evidence. Specifically, defendant points to Deweese's testimony that he was a "drug addict" and asserts there is a "serious risk" he was convicted based on that comment rather than the evidence presented.

¶ 57    A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show that counsel's performance was (1) deficient and (2) prejudicial." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 61, 115 N.E.3d 1148. "Failure to satisfy either prong negates a claim of ineffective assistance of counsel." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88, 129 N.E.3d 755.

¶ 58    To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting *Strickland*, 466 U.S. at 688). Prejudice is established when a reasonable probability exists, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29, 161 N.E.3d 125.

¶ 59    Here, defendant claims he was prejudiced because the jury "very well may have ultimately" found him guilty based on Deweese's comment that he was a "drug addict." However, "[s]atisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81, 25 N.E.3d 526. Defendant can only speculate as to what the jury believed, but such speculation is insufficient to demonstrate prejudice under *Strickland*. Thus, as defendant cannot demonstrate he was prejudiced by Deweese's comment, his claim of ineffective assistance of counsel fails. See *Hibbler*, 2019 IL App (4th) 160897, ¶ 88.

¶ 60                        III. CONCLUSION

¶ 61   For the foregoing reasons, we affirm the trial court's judgment.

¶ 62   Affirmed.